[S. F. No. 2871. In Bank.—March 19, 1902.]

In the Matter of the Estate of JAMES G. FAIR, Deceased. JAMES S. ANGUS, THOMAS G. CROTHERS, and W. S. GOODFELLOW, Executors and Trustees, and HERMAN OELRICHS, Jr., et al., Minor Beneficiaries, Appellants, v. CHARLES L. FAIR, THERESA A. OELRICHS, VIRGINIA FAIR VANDERBILT, and NETTIE R. CRAVEN–FAIR, Respondents.

WILLS—INVALID TRUST TO CONVEY—DEFEAT OF TRUST SCHEME—CASE AFFIRMED.—The decision in the *Estate of Fair,* 132 Cal. 552, holding that a trust in real property created by will for the benefit of the children of the testator during their lives, and thereafter to convey to certain beneficiaries named, contained a void trust to convey, and that such void trust defeated the trust scheme of the testator and rendered the entire trust during the lives of the children invalid and void, is affirmed.

ID.—INSEPARABLE TRUST IN PERSONAL PROPERTY—INVALIDITY.—A trust in personal property created by the same will which is inseparably united and interwoven with the invalid trust in regard to the real property is invalid, and must fall with the defeat of the trust scheme of the testator.

APPEAL from a decree of distribution of the personal estate of a decedent to his heirs at law and from an order denying a new trial. James M. Troutt, Judge.

The facts are stated in the opinion of the court.

William M. Pierson, and George E. Crothers, for James S. Angus and Thomas G. Crothers, Appellants.

Garret W. McEnerney, and Robert Y. Hayne, for W. S. Goodfellow, Appellant.

Van R. Paterson, for Herman Oelrichs, Jr., et al., Minor Beneficiaries, Appellants.

Knight & Heggerty, and James H. Budd, for Charles L. Fair, Respondent.

Lloyd & Wood, Bishop & Wheeler, Wilson & Wilson, and Garber, Boalt & Bishop, for Theresa A. Oelrichs and Virginia Fair Vanderbilt, Respondents.

W. W. Foote, Pence & Pence, Denson, Oatman & Denson, and A. Reuf, for Nettie R. Craven-Fair, Respondent.

McFARLAND, J.—This is an appeal by Angus et al., named as executors and trustees in the will of James G. Fair, deceased, and by certain other parties, from a decree of distribution distributing a large amount of the personal property of the estate to the three children of the deceased, Charles L. Fair, Theresa A. Oelrichs, and Virginia Fair Vanderbilt, who are his next of kin and only heirs at law, and from an order denying a motion for a new trial. The will of the deceased and all matters to be considered are fully set forth in the opinions of this court in the former case of the *Estate of Fair,* 132 Cal. 532,[1] and they need not here be restated. It was. held in that case that the trusts attempted to be created by the will were invalid and void as to all the real property of the estate; but it is contended by appellants in the case at bar that, notwithstanding such decision, the will and the trusts are still operative as to the personal property. This contention presents the only question in the case.

The position taken by appellants in the present appeal was clearly determined to be untenable by the decision in the former case. It was there contended by these appellants: 1. That the attempted ultimate disposition of the real prop-

---

[1] 84 Am. St. Rep. 50.

erty by the will was not void on the ground that it was a forbidden trust to convey; and 2. That even if that were so, still there remained in the trustees a valid trust estate for life,—during the lives of the three children and the survivor of them. The court there held, as to the matter involved in the first contention, that the will was void. As to the second contention the court said: "We also agree with the learned judge of the court below that the invalid trust to convey carries with it the otherwise valid trust for the lives of the testator's children, and that therefore the *whole trust failed.* Of course, the general rule is well settled, that where there are valid and invalid clauses in a will, the question whether the valid clauses can stand depends upon whether or not the invalid ones are so interwoven with them that they cannot be eliminated without interfering with and changing the main scheme of the testator." Again it was said, quoting from an authority: "Where a will is good in part and bad in part, the part otherwise valid is void if it works such a distribution of the estate as, from the whole testament taken together, was evidently never the design of the testator. Otherwise, where a good part is so far independent that it would have stood had the testator been aware of the invalidity of all the rest." And after further citation of authority illustrating the principle, it was said: "In the case at bar, it is quite clear from the will that the trust as to the income during the lives of the testator's children and the trust to convey the *corpus* of the property after their death to certain enumerated classes of persons were inseparable parts of one entire scheme; and there is no reasonable ground for the supposition that if he had known that the latter trust was void he would have allowed the former to stand." And, again, it was said: "We hold that the invalidity of the trust to convey *destroys the whole scheme of the will,* and carries with it the trust for the lives of the children." In the concurring opinion of Mr. Justice Henshaw it is said: "For reasons amplified in the foregoing opinions, it seems apparent that the failure of the trust to convey *defeats the testator's trust scheme.*" It is evident, therefore, that the court intended to decide, and did decide, that the invalid trust defeated the whole scheme of the testator, and left standing no otherwise valid provisions

CXXXVI. Cal.—6

which were not inseparably interwoven with those which were invalid. The decision, it is true, does not expressly mention the personal property, because it happened that the decree of distribution there appealed from dealt only with the real property; but it would as clearly have swept away the claim of the trustees to the personalty, if that had been in the way, as it did their claims to the life estate. Indeed, the principle of the decision applies with even more force to the personal property than to the life estate. In the will there is no distinction between the realty and the personalty. They are both united in one inseparable trust. The trustees are given full control over both kinds of property. They could use the personal property to pay the expenses of maintaining and improving the real property. They are expressly given power "to sell any property of my estate, *real or personal,*" and "to invest and reinvest the proceeds of *sales of property,* and to purchase or acquire other property, or apply the proceeds of sales of property to the improvement of other property"; also, to maintain the testator's mausoleum in a named cemetery, "and for such purpose, and any other of the purposes declared in this will, use and apply so much of the trust property as may be necessary." The testator states in the will that he has acquired a large amount of real property in San Francisco, "with the intention of holding and improving the same, and it is my desire that my trustees shall, and so far as they may deem advisable, continue to hold and improve said real estate." And it is provided that the trustees, while managing and controlling the property in the manner above stated,—selling any part thereof, real or personal, and investing and reinvesting the proceeds of the sale, or using one part of the property for the improvement of another part, etc., "as they may determine,"—are to pay to the three children monthly "the net income." It is therefore obvious—indeed, too clear for reasonable controversy on the point—that the realty and the personalty are so inseparably interwoven in the trust scheme that destruction of the fabric as to the realty inevitably destroys it as to the personalty. The clear intent of the testator, expressed in the will, was, that for the probable long period of time which would elapse before the death of the survivor of his children, his trustees were to own and

control the entire body of his property real and personal, to manage it according to their best judgment, and at the end of the period to transfer and convey the entire property to certain named beneficiaries, who were to be persons other than his children; and that during such period they should pay to the children whatever monthly net income of both the realty and personalty might be the result of the management of the property according to the terms of the will. This was the net income which the testator intended to give the children; it was not the income which might be derived from interest on bonds and mortgages and other personal assets, undiminished and unaffected by the necessities of the management and improvement of the real property belonging to the same estate and covered by one and the same trust.

Moreover, the net income was given upon the theory, and the express intent of the testator, that his children were never to have any part of the *corpus* of the realty; and, further, that even the children of his son Charles should never have any interest therein. And, as was said on the former appeal, "his division of the income was evidently based upon the considera-tion of the persons who would, or would not, get the *corpus* of the property." Under these conditions, to hold that the testator, if he had known that his attempted disposition of the realty was invalid, and that upon his death his vast amount of real property, worth many millions of dollars, would go immediately in fee-simple to his children, would have given to them also the income of the personal property, would be to indulge in a most impossible supposition and to violate the settled law on the subject. Of course, there are cases, some of which are cited by appellants, where provisions about personalty in a trust have been enforced, while provisions in the same trust about realty were held to be invalid; but they were cases like *Roberts* v. *Cary*, 84 Hun, 328, where it was said, "the test is whether the upholding of one part and the rejection of another will *defeat the presumed wishes of the testator*," and *Kalish* v. *Kalish*, 166 N. Y. 368, where, as was there said by the court, "it is *possible* to cut out the invalid provisions, so as to leave intact the parts that are valid, and to *preserve the general plan of the testator*." And this is the meaning of section 1317 of the Civil Code, where

the word "possible" is used in the sense given to it in the above quotation from *Kalish* v. *Kalish,* and in the general authorities on the subject.

The decree and order appealed from are affirmed.

Van Dyke, J., Garoutte, J., and Henshaw, J., concurred.

Beatty, C. J., and Harrison, J., dissented.

Rehearing denied.