[S. F. No. 2877. In Bank.—July 31, 1903.]

## In the Matter of the Estate of HENRY PICHOIR, Deceased.

ESTATES OF DECEASED PERSONS—WILL—INVALID TRUST TO CONVEY—RIGHTS OF HEIRS.—A will devising real property to trustees which contains a trust to convey the same to certain parties named, to whom the will contains no words of devise, is invalid, and such real property devolves upon the heirs of the decedent, and should be distributed to them.

ID.—TRUSTS AS TO PERSONAL PROPERTY—INDEPENDENT VALID PROVISIONS.—Independent and separable provisions of the will containing valid trusts as to the personal property are not affected by the invalidity of a trust to convey the real property, if it does not affect the main scheme of the testator.

ID.—TITLE OF TRUSTEE—QUANTITY OF INTEREST—EXTENT AND VALUE OF PROPERTY.—The quantity of interest or title which passes to the trustee of an express trust is commensurate with the necessities of his office; but the extent and value of the property left to the trustee is not affected by the quantity of the interest or title, if there is no express limitation as to such extent or value. If the value of the property lawfully in their hands is greater than is sufficient to carry out the trust, the final beneficiary is not thereby entitled to receive anything until the happening of the event entitling him to take under the will.

APPEAL from a decree of the Superior Court of the City and County of San Francisco distributing the estate of a deceased person. J. V. Coffey, Judge.

The facts are stated in the opinion.

John Garber, and John A. Wright, for Appellant.

The whole will is void, under the decisions of this court. (*Estate of Fair,* 132 Cal. 532;[1] *Estate of Fair,* 136 Cal. 79; *Estate of Sanford,* 136 Cal. 97.) The will should not be construed so as to displace an heir at law. (Jarman on Wills, p. 532; *In re Walkerly,* 108 Cal. 627;[2] 35 Misc. Rep. 247; *Central Trust Co.* v. *Richards,* 71 N. Y. Supp. 773; *Ridgley* v. *Bond,* 18 Md. 432, 448; *Elder* v. *Lantz,* 49 Md. 186, 201; *France's Estate,* 75 Pa. St. 220, 225; 29 Am. & Eng. Ency. of Law, 1st ed., 510, and cases cited; Woerner's American Law of Administration, sec. 562.)

Lindley & Eickhoff, and Charles W. Slack, for Respondent.

The ultimate disposition of the personalty is valid, and in this case is not affected by the question as to the validity or invalidity of the trust to convey. (*Estate of Willey,* 128 Cal. 1, 11; *Nellis* v. *Rickard,* 133 Cal. 617, 621;[3] *Kennedy* v. *Hoy,* 105 N. Y. 134, 137; *Underwood* v. *Curtis,* 127 N. Y. 523, 541; *Kalish* v. *Kalish,* 166 N. Y. 368, 374; *Harrison* v. *Harrison,* 36 N. Y. 543; *Haxton* v. *Corse,* 2 Barb. Ch. 506, 519; *Darling* v. *Rogers,* 22 Wend. 483; *Becker* v. *Becker,* 13 App. Div. 342; *Adams* v. *Perry,* 43 N. Y. 487.)

McFARLAND, J.—This is an appeal by Ida Amadi, who is admitted to be the sole heir at law of Henry Pichoir, deceased, from an order of distribution by which the whole of the estate of said decedent is distributed to certain persons named as trustees in a duly probated will of the decedent. The estate of the testator consists of certain real property of the value of about ten thousand dollars, and personal property of the value of about one hundred and forty-two thousand dollars. It does not appear whether or not the decedent had any real property at the date of the will. The main contentions of appellant are: 1. That the will contains a forbidden trust to convey real property, and is therefore void as to such property; and 2. That in the trust attempted to be created by the will the real and personal property are so interwoven as to be inseparable, and therefore the whole trust fails. It would

---

[1] 84 Am. St. Rep. 70.          [3] 85 Am. St. Rep. 227.

[2] 49 Am St. Rep. 97.

probably take more space here to state accurately the contents of the will than to copy it. It is as follows:—

"I, Henry Pichoir, do declare this to be my last will, hereby revoking all other wills by me at any time heretofore made.

"First: I devise and bequeath all my property and estate wheresoever situate unto Antoine Borel, Ami Vignier, and Hamilton Smith, Jr., all of San Francisco, California, as joint tenants and not as tenants in common with right of survivorship, in trust, however, for the following uses and purposes and none other, that is to say: to pay over to my sister, Ida Amadi, widow, now residing in the city of Liege, in the kingdom of Belgium, during the term of her natural life, the sum of eighteen hundred dollars in gold coin of the United States, or its equivalent a year, payable semi-annually in installments of nine hundred dollars each in advance. Said installments are to be paid first out of the income of my estate, but if the income shall not be sufficient to meet them, then resort shall be had to the principal for any deficiency. If the estate in their hands at my death or at any time thereafter shall exceed in value the sum of twenty-five thousand dollars in said gold coin, then I direct my trustees above-named to pay over unto William Mooser, architect, now residing at number 722 Union Street, San Francisco, California, or if he shall not be alive at the time of my death, then to his wife, or if she shall not be alive at the time of my death, then to such of his children as shall then be living, to be divided among them equally, share and share alike, the excess of my estate over twenty-five thousand dollars, but not exceeding however five thousand dollars in said gold coin. And I do further direct my said trustees, upon the death of my said sister, to convey and pay over such of my estate as shall then be remaining in their hands unto the said William Mooser, or if he shall not be then alive then to his wife, or if she shall not be then alive then to and among his children who shall then be living, to be divided among them equally share and share alike.

"Second: I appoint the said Antoine Borel, Ami Vignier, and Hamilton Smith, Jr., to be the executors hereof, and desire that no bonds or other security be required of them by any court for the faithful performance of their duties as such.

"Third: I give to my said executors and trustees full power and authority to sell the whole or any part of my estate at public or private sale, with or without notice, to such persons, for such price, and upon such terms as to them shall seem fit, and without the necessity of applying to any court for previous authority so to do and the proceeds of such sale or sales and the rents, issues, and profits of my estate, to invest as they may deem best, with like powers of resale and reinvestment when and as often as to them shall seem advantageous to said estate."

One of the trustees, Hamilton Smith, Jr., is dead.

The will clearly contains a trust to convey all the real property of the testator to the Moosers. It has no words of devise to them. It neither contains the word "devise" nor any other word or words equivalent thereto. If it were not for the words "trust" and "convey," there would be no operative words in the will by which the title to the real property would in any way pass to the Moosers. And the way provided for the vesting of the title in them being unlawful and forbidden, the real property was not disposed of by the will, and vested at the death of the testator in the heir at law. The case, in this respect, cannot be distinguished from *Estate of Fair*, 132 Cal. 523.[1] The real property of the decedent should have been distributed to the heir at law, the appellant; in this respect the order appealed from is erroneous.

We have fully considered the very able arguments made by counsel for appellant in support of their contention that in this case it should be held, as was held in the other Fair case which is reported in 136 Cal. 79, that in the will here in question the valid trusts as to the personalty are so inseparably blended with the invalid trust as to the realty as to destroy the whole scheme of the testator and invalidate the entire trust; but we do not think the contention maintainable. There is little difference of opinion as to the general rules which obtain in determining the questions here involved. They are, that "where there are valid and invalid clauses in a will, the question whether the valid clauses can stand depends upon whether or not the invalid ones are so interwoven with them that they cannot be eliminated without interfering with and

[1] 84 Am. St. Rep. 70.

changing the main scheme of the testator." (*Estate of Fair,* 136 Cal. 79.) Also, that "of two rules of interpreting a will, that is to be preferred which will prevent a total intestacy." (Civ. Code, sec. 1326.) Also, that "where his intention cannot have effect to its full extent, it must have effect so far as possible." (Civ. Code, sec. 1317.) Also, that "a testator must do more than merely evince an intention to disinherit before the heir's right of succession can be cut off. He must make a valid disposition of his property." (*In re Walkerly,* 108 Cal. 627.[1]) The difficulty is in applying these principles to particular cases. In *Draper* v. *President and Fellows of Harvard College,* 59 How. Pr. 269, a testator had given all his property, real and personal, to Harvard College; under the law of New York a devise of real property to a foreign corporation was void, but a gift by will of personal property to such a corporation was valid; and it was held that the will was void as to the real property, but valid as to the personal. That was a case where it was clear that the clauses of the will in question were separable. On the other extreme is the will in the Tilden case, with respect to which all lawyers perhaps will agree that the clauses there in question were inseparable. Between these extreme cases there are many to which the application of the principles above stated is difficult. We think, however, that the case at bar belongs to the category of cases where that which is valid in a will can be separated from that which is invalid. In this case it was clearly the design of the testator, expressed in the will, that on the death of his sister his trustees should convey all his real property and turn over all his personal property to the Moosers; and the invalid attempt to have the real property conveyed to them merely diminished the amount of his intended bounty; but there is no reason whatever to suppose that he would not have given them the personal property if he had known that they would not get the real property,—that he would not have given them anything if he had known that they were not to have everything. The Fair case was very different. There— as is stated with much detail in the opinions in the two Fair cases above referred to—the scheme of the testator was an exceedingly complicated one. It was stated on the face of

[1] 49 Am. St. Rep. 97.

the will that the testator had large holdings of real property
the improvement of which was expressly provided for, and it
appeared that the real property of the estate was of a value
of several millions of dollars, and the personal property of
about the same value. Without considering other intricacies
of the tangled skein of that will, it is sufficient to say that
one of the main and persistent purposes of the testator, ex-
pressed in his will, was that the *corpus* of such real property,
as well as that of the personal property, should never go to
either of his three children; that as to his son, it should never
go even to the latter's children; that the three children should
only have the net income of the entire property during their
lives; that if the son should die before either of the daughters,
his share of the income should go to his surviving sisters or
sister; but that if either daughter should die before the son,
her proportionate share should *not* go to the son. Now, this
settled purpose would have been entirely frustrated if the
court had held the trust valid as to the personal property
while holding it invalid as to the real. In that event the
children, at the testator's death, would have immediately
taken the *corpus* of all his realty; they also during their lives
would have received the income of the personalty, which was
given upon the theory that they were not to have any of his
realty; and his son would not only have taken immediately
one third of the realty, but, in the event of the prior death of
his sisters, might take it all, and his children, in the event of
the son dying intestate, might inherit the whole of said
realty,— all of which would have been exactly contrary to the
clearly expressed intent and purpose of the testator. And
these were among the considerations upon which the court in
the Fair cases, after determining that the attempted trust to
convey the realty was void, held that the asserted estate of the
trustees for life was also invalid, and that the trust as to the
personal property could not be separated from that of the real-
ty without destroying the whole scheme of the testator. (See
*Estate of Fair,* 132 Cal. 540-543;[1] *Estate of Fair,* 136 Cal.
83.) In the latter case it is said that it is impossible to
suppose ''that the testator, if he had known that his at-
tempted disposition of the realty was invalid, and that upon

[1] 84 Am. St. Rep. 70.

his death his vast amount of real property, worth many millions of dollars, would go immediately in fee simple to his children, would have given to them also the income of the personal property.'' No consequences of that character would follow the separation of the real from the personal property in the case at bar. The Moosers will get a great deal of the testator's estate, as he intended, but not all. We see no embarrassment in the fact that the sister's annuity would come from the income, and if necessary from the principal, of the personal property, and not from the income of both the realty and personalty. If at any time the income and *corpus* of the personalty shall be insufficient to meet the annuity, she would simply get less. And there is no difficulty in the accomplishment of the separation of the real from the personal property.

There was evidence in the case that the value of the present amount of personal property of the estate is such that the income therefrom exceeds the amount of the annuity to the sister during her life; and it is contended that the court should have distributed to the trustees merely enough of the personal property to produce an income equal to the annuity. In our opinion, this contention is not maintainable. Where the instrument creating an express trust conveys or transfers to the trustee the whole of certain property without limitation, the rule that the trustee takes only such an estate in the trust property as is necessary to the discharge of his trust duties refers only to the quantity of his estate in the property, —as, for instance, an estate for years, an estate for life, or an estate in fee,—and not to the extent and value of the property itself. This is the meaning of the current of authorities, although, perhaps, there may be some expressions found in the books which go further. The correct rule goes no further than is expressed in *Morffew* v. *San Francisco etc. R. R. Co.,* 107 Cal. 587, as follows: ''*The quantity of interest* which passes to the trustee in case of an express trust is commensurate with the necessities of his office. The trustee shall have an estate in fee, if that is necessary to enable him to perform the duties imposed upon him.'' The principle is clearly and correctly stated in *Cochrane* v. *Schell,* 140 N. Y. 516. In that case all the testator's property had been given to the trustee in trust to pay certain annuities out of the income during the

lifetime of his daughter, and at her death to transfer all the property remaining to certain named grandchildren. The income of the property was largely in excess of the amount of the annuities, and it was contended that the trustees should have only such part of the property as should produce the amount of the annuities, but the court said: "The claim that the court should direct the setting apart of sufficient of the capital of the estate to produce the annuities, leaving the remainder of the estate to go to heirs and next of kin until the death of the testator's daughter, cannot be supported. There was a similar suggestion made when the case of *Hawley* v. *James* was before the chancellor (5 Paige, 318), and he declared that the court of chancery had no power to divest the legal title of the trustees to any portion of the estate." Of course, a testator may expressly provide that only so much of his property as is necessary for a certain purpose shall go to the trustee, but there is no such provision in the will here in question. The testator evidently contemplated that it might probably take the income of all his property to pay the annuity, and even provided that the principal should be invaded for that purpose, if necessary. It cannot be supposed that if he contemplated an increase in value of his property at any particular time, he did not also contemplate possible losses, shrinkages in value, bad investments, etc. His will contains no direction concerning accumulations of income, and all the residue of the property, whether increased or diminished, will go to the Moosers under the will, and pursuant to section 733 of the Civil Code.

The order appealed from is reversed, and the court below is directed to make and enter an order distributing all the real property of the decedent to the appellant, Ida Amadi, and all the personal property to Antoine Borel and Ami Vignier, in trust for the uses and purposes declared in the will of the said Henry Pichoir, deceased.

Van Dyke, J., Henshaw, J., and Lorigan, J., concurred.

ANGELLOTTI, J., concurring.—I concur in the judgment and in all that portion of the opinion relating to the validity of the trust as to the personal property.

So far as the attempted trust as to the realty is concerned,

CXXXIX. Cal.—44

I can see no material distinction between the case at bar and *Estate of Fair,* 132 Cal. 523,[1] and *Estate of Sanford,* 136 Cal. 97, and my concurrence is based upon the authority of those cases.

Shaw, J., and Beatty, C. J., concurred.

Rehearing denied.