.[S. F. No. 9177. Department One.—May 13, 1920.]

In the Matter of the Estate of JOSEPHINE A. PHELPS, Deceased. W. F. CHIPMAN et al., Appellants, v. W. N. SWASEY et al., Respondents.

[S. F. No. 9210. Department One.— May 13, 1920.]

EUGENIE H. SCHROEDER, Appellant, v. W. N. SWASEY et al., Respondents.

[1] ESTATES OF DECEASED PERSONS—CONSTRUCTION OF WILL—INTENTION OF TESTATOR.—A will must be given effect in accordance with the intention of the testator, as found from the language of the will, where it is clear, and if it is ambiguous, from the language of the will aided by such extrinsic facts as may be admissible for that purpose.

---

1. Law governing construction of will, note, 2 **L. R. A.** (N. S.) 443.

[2] ID.—INTERPRETATION UPHOLDING WILL.—A will must be given an interpretation which will make it operative, rather than one which will render it inoperative, and an interpretation by which it disposes of the property dealt with is to be preferred to one which creates an intestacy.

[3] ID.—CONVERSION OF PROPERTY—DIRECTION IN WILL—PERSONALTY FROM DEATH.—Where a will directs that the testator's property be converted into money and the proceeds applied to certain purposes, the property and all its proceeds must be deemed personal property from the time of the testator's death.

[4] ID.—DEVISE IN TRUST—CONVERSION INTO MONEY—POWER OF ALIENATION NOT UNLAWFULLY SUSPENDED.—A devise to trustees with directions to sell for the purpose of converting the estate into money to be applied in carrying out further trusts created in the proceeds and with power to sell immediately, does not occasion an unlawful suspension of the power of alienation, and this is equally true where a future date is fixed for the exercise of the power if the donees are permitted to sell in the meantime in their discretion.

[5] ID.—DEVISE IN TRUST—CREATION OF FUND FOR PAYMENT OF SPECIFIC LEGACIES—POWER OF ALIENATION NOT UNLAWFULLY SUSPENDED.—A devise directing trustees to sell property to create a fund for the payment of specific legacies and payment of residue to residuary legatees does not unlawfully suspend the power of alienation, since the right to the legacies, both specific and residuary, vested immediately upon the death of the testatrix and were subject to alienation by the legatees at any time thereafter.

[6] ID.—ACCUMULATION OF FUND—DISPOSITION UPON DEATH OF BENEFICIARIES—POWER OF ALIENATION NOT UNLAWFULLY SUSPENDED.— A provision in a will directing trustees to accummulate a fund from sales of the testator's property, and to pay after the accumulation of the fund a specified portion of the income thereof to certain persons during their respective lives, and in the event that any of them shall not be living at the time of such accumulation, or if then living, shall afterward die, such proportion of the fund shall be paid to their children then living, does not unlawfuly suspend the power of alienation.

[7] ID.—VESTING OF GIFT—CONSTRUCTION OF WILL.—In a case of ambiguity or inconsistency, the law favors a construction that will cause the gifts to vest, if the opposite construction will render it void.

---

3. When equitable conversion takes place under will directing sale of land at future time, notes, 5 Am. St. Rep. 145; 17 Ann. Cas. 643; Ann. Cas. 1915D, 434.

[8] ID.—SEVERABLE TRUSTS—SUSPENSION OF POWER OF ALIENATION—MANNER OF CONSIDERATION.—Where the several trusts created by a will in a fund to be accumulated are severable, the question whether the power of alienation is suspended is to be considered with reference to each share separately.

[9] ID.—PAYMENT OF ANNUITIES PENDING ACCUMULATION OF FUND—PROVISION DISPOSING OF REMAINDERS OF FUND UNAFFECTED BY INVALIDITY.—Where a testatrix directed trustees to sell her property, accumulate a fund out of the proceeds, and pay specified portions of the income therefrom to certain persons with remainder to their children upon death before or after the accumulation of the fund, the validity of such trust was not affected by a further provision directing payment of an annuity to each of such persons pending the accumulation of the fund, which provision unlawfully suspended the power of alienation between the death of such a person and the accumulation of the fund.

[10] ID.—VALID AND INVALID SEPARABLE TRUSTS—RULE.—Where there are several independent trusts, some of which are legal, while others are in contravention of the statute regulating uses and trusts· or the statutes against perpetuities, the estate of the trustee will be upheld to the extent necessary to enable him to execute the valid trusts, and will only be void as to the illegal or invalid trusts.

APPEALS from an order of distribution of the Superior Court of San Mateo County. George H. Buck, Judge. Reversed.

The facts are stated in the opinion of the court.

W. C. Sharpsteen for Appellants in S. F. No. 9177.

Henry L. Corson, John L. McNab and Byron Coleman for Respondents in S. F. No. 9177.

Emilio Lastreto and Walter H. Linforth for Appellant in S. F. No. 9210.

John L. McNab and Byron Coleman for Respondents in S. F. No. 9210.

SHAW, J.—The fifth clause of the will of the testatrix devised the residue of her property, consisting wholly of real estate and embracing nearly the entire estate, to the executors as trustees in trust for certain purposes specified therein. Upon a former appeal in the matter of this estate

this court held that the devise in trust was to be performed by the executors in their capacity as trustees and not in the course of their administration of the estate as executors. (*Estate of Phelps*, 179 Cal. 703, [178 Pac. 846].)    As a consequence, the performance of the trust could not effectually begin until after the distribution of the estate.    The present appeals result from the order of the court made upon a petition for such distribution.    The court below held that the trust was void and that the decedent died intestate as to the residue, and thereupon distributed the estate to her legal heirs.    From this order the persons named as trustees appeal in case numbered 9177 and Eugenie H. Schroeder, a sister of decedent and a beneficiary of the trust, appeals separately upon the record presented in case numbered 9210.

The general plan of the trust is that the trustees shall sell the property devised to them and pay the proceeds to certain beneficiaries.    The first sales are to be applied to create a fund of two hundred and forty thousand dollars, the income of which is to be paid to beneficiaries named, during their lives, and, upon death, to other persons designated. Out of the remainder is to be paid certain sums to designated beneficiaries in the order named, amounting in all to two hundred and eighty thousand six hundred dollars.    Any of the fund remaining after the payment of these sums was to be paid to two sisters and a nephew of the testatrix.

The respondent's claim is that the will creates an unlawful restraint of alienation, a restraint forbidden by sections 715 and 716 of the Civil Code.    Section 715 forbids the suspension of the absolute power of alienation by any limitation or condition, for a period longer than the continuation of the lives of persons in being at the creation of the limitation or condition.    Section 716 provides that if any future interest created operates to suspend the power of alienation as provided in section 715 it is void in its creation and that such power of alienation is suspended when there are no persons in being by whom an absolute interest in possession can be conveyed.    The date of the death of the testatrix is deemed to be the time of the creation of the limitation upon alienation, if any was created.    (Civ. Code, sec. 749.)    The testatrix died in 1916, so the amendment of 1917 [Stats. 1917, p. 699] to section 715 does not apply.    We have stated its effect as it stood before that amendment.

In considering the effect of the will it is necessary to bear in mind certain well-established rules of construction. [1] The will must be given effect in accordance with the intention of the testator, as found from the language of the will, where it is clear, and if it is ambiguous, from the language of the will aided by such extrinsic facts as may be admissible for that purpose. [2] A will must be given an interpretation which will make it operative, rather than one which will render it inoperative, and an interpretation by which it disposes of the property dealt with is to be preferred to one which creates an intestacy. In order to explain the questions presented it is necessary to set forth at some length the provisions of the trust clause of the will.

The trust clause first directed that the trustees should "lease until sold as hereinafter provided all of my real estate upon such terms as to them may seem best, and until the accumulation of the fund hereinafter provided." The rentals and the income from all other sources were to be used to pay annuities, monthly, as follows: To Mrs. Lord and Mrs. Schroeder, her sisters, each the sum of three hundred dollars; to Edward T. McLean, a brother, and his wife, jointly, one hundred dollars; to her sister, Mrs. Swasey and her brother Alfred, each one hundred dollars. These annuities were to be continued only until the two hundred and forty thousand dollar fund should be accumulated from the proceeds of sales. With regard to this accumulation the clause then provides as follows:

"I direct my executors and trustees from time to time as sales of my estate may in their judgment be profitably made, to sell sufficient estate to yield a fund of two hundred and forty thousand dollars, and pending the accumulation of said fund, I direct my said executors and trustees to invest and keep invested such sums as may be derived from such sales, and to use the income in the payment of the above annuities. As soon as a fund of two hundred and forty thousand dollars has been accumulated, the same shall be invested and kept invested, and out of the net income derived therefrom there shall be paid to said annuitants monthly during their respective lives, in lieu of the annuities above provided, portions of said income as follows:

"1. To my sister Virginia A. Lord three-eighths thereof. 2. To my sister Engenie H. Schroeder three-eighths thereof.

3. To my brother Edward T. McLean and to his wife Mattie McLean jointly and to the survivor of them one-twelfth thereof. 4. To my sister Amanda A. Swasey one-twelfth thereof. 5. To my brother Alfred A. McLean one-twelfth thereof.

''In the event that any of my said sisters and brothers shall not be living at the time that said fund has been accumulated, or if then living shall afterward die, I direct my executors and trustees to pay out of said fund as follows'':

It then directed that upon the death of Mrs. Lord three-eighths of the fund, or ninety thousand dollars, should be paid to her heirs, and that upon the death of Mrs. Schroeder a like amount should be paid to her heirs. Upon the ·death of the survivor of Edward T. and Mattie McLean, twenty thousand dollars was to go in equal shares to the children then living, of said persons. Upon the death of Mrs. Swasey twenty thousand dollars was to go to the children of said sister then living. ·Upon the death of Alfred A. McLean, twenty thousand dollars was to go as follows: Five thousand dollars to Minnie McLean, his wife, if she were living, otherwise to the children of said Alfred A. McLean and his wife, then living, and fifteen thousand dollars in equal shares to said children then living.

With respect to the excess above two hundred and forty thousand dollars the clause provided: ''From time to time as sales of my estate may in the judgment of my executors and trustees be profitably made, I direct my executors and trustees to convert my estate into cash, and after devoting sufficient of the proceeds thereof to the purposes specified in Paragraph A of this Article, to pay in the order named to the persons hereinafter named or to their heirs, in case of their death, except where otherwise provided, the sums set opposite their respective names'': Then follows a list of the beneficiaries and the amounts of the gifts amounting to the sum of two hundred and eighty thousand six hundred dollars, above mentioned. With respect to the remainder the provision is as follows:

''The remainder of my estate, exclusive of that described in the Sixth and Seventh Articles hereof, shall be divided into three equal parts. One part thereof shall be paid to my sister Virginia A. Lord, if living, or to her heirs if dead; one part thereof to my sister Engenie H. Schroeder, if

living, or to her heirs if dead, and one part thereof to my nephew W. F. Chipman, if living, or to his heirs if dead.''

The final paragraph of the trust clause is as follows:

''Although it is my intention to have all of my estate, with the exceptions already stated, converted into cash, I desire that my executors and trustees shall make sales with the sole object that my two sisters and my nephew above mentioned shall receive substantial sums out of the remainder of my estate. My estate at present valuations is ample for that purpose, and I do not wish it sacrificed to satisfy the importunities of those who, while dear to me, are not the first in my affections.''

The part of the fifth clause relating to the annuities and the two hundred and forty thousand dollar fund is designated therein by the letter ''A.'' The succeeding part is designated by the letter ''B.''

The fifth clause of the will creates five separate and distinct trusts: 1. The trust to convert the entire estate into money; 2. The provisional trust for the payment of the temporary annuities to the brothers and sisters until such time as the fund of two hundred and forty thousand dollars shall have been accumulated; 3. The trust in the fund consisting of the first two hundred and forty thousand dollars received from sales of the property, of which the income is to be divided between the brothers and sisters during their respective lives and upon their deaths, respectively, the remainder is to be given absolutely, in the same proportions, to their respective heirs or children; 4. The trust to pay the specific legacies amounting to two hundred and eighty thousand six hundred dollars; 5. The trust in the ultimate residue, if any, of the proceeds, which is to go to Mrs. Lord, Mrs. Schroeder, and W. F. Chipman. We will defer the discussion of the trust for the payment of the annuities until after our consideration of the other four trusts.

The direction at the beginning of part ''B'' of the fifth clause applies to the whole of the trust property and is a direction for its conversion into money and the application of the proceeds to the three main objects of the testatrix, namely, the disposition of the two hundred and forty thousand dollar fund, the payment of the specific legacies, and the payment of any residue to the residuary legatees. It in-

cludes and provides for the sales to accumulate the first
fund as well as the other funds necessary to carry out the
desires of the testatrix, as expressed in the succeeding pro-
visions. [3] In such a case the "property and all its pro-
ceeds must be deemed personal property from the time of the
testator's death." (Civ. Code, sec. 1338.)

[4] A devise to trustees with directions to sell for the
purpose of converting the estate into money to be applied
in carrying out further trusts created in the proceeds and
with power to sell immediately does not occasion an unlawful
suspension of the power of alienation, and "this is equally
true where a future date is fixed for the exercise of the
power if the donees are permitted to sell in the meantime in
their discretion." (Chaplin on Suspension, sec. 287.) This
was said by the learned author in discussing the effect of
"powers in trust" authorized by the New York law on the
subject. These provisions, in part at least, were originally
carried into our Civil Code as section 860 and as sections
878 to 940, and they were all repealed in 1874. But the rule
above stated does not depend on statutory provisions allowing
the creation of "powers in trust to convey" and the like,
but is founded on the fact stated by the author in the same
section, that by the very terms of such a power, "there are
persons in being who can convey absolutely." The rule is
well settled in New York. (*Stewart* v. *Hamilton,* 37 Hun,
19; *Roberts* v. *Corning,* 89 N. Y. 236; *Van Veghten* v. *Van
Veghten,* 8 Paige Ch. 104, 122; *Underwood* v. *Curtis,* 1 Silver-
nail, 288, 52 Hun, 613, [5 N. Y. Supp. 478].) In this state the
same rule prevails. (*Estate of Heberle,* 155 Cal. 723, [102
Pac. 735].) In *Stewart* v. *Hamilton,* the trustees were given
power to sell, with the proviso: "I enjoin my executors not
to sell any of the real estate under three years, unless sold
to advantage. Sold on time, if to advantage." It was held
that since the power to sell could be exercised at any time
and was entirely in the discretion of the trustees, there was
no unlawful suspension of the power of alienation. A sim-
ilar cautionary injunction was given in *Estate of Heberle,
supra,* and the conclusion was the same. (See, also, *Hagen*
v. *Sacrison,* 19 N. D. 160, [26 L. R. A. (N. S.) 724, and
note, 123 N. W. 518].) It is therefore clear that the terms
of the directions for the sale of the property are valid and

that they do not transgress the sections of the code on the subject of suspension of the power of alienation.

[5] Concerning the fourth and fifth trusts above enumerated, those relating to the specific legacies and the ultimate residue after payment thereof, little need be said. Neither the payment of the specific legacies nor of the ultimate residue is dependent upon any event except the making of sales for sums sufficient to realize the necessary amount of money. The right to the legacies, both specific and residuary, vested immediately upon the death of the testatrix and were subject to alienation by the legatees at any time thereafter. They are not different in that respect from any other legacy that is dependent upon the amount of the estate from which they are to come. The terms of the will regarding them do not suspend the power of alienation.

[6] We are also of the opinion that the provisions of part "A" relating to the third trust do not unlawfully suspend the power. To illustrate this, the share of Mrs. Swasey and her children in the fund may be considered alone. The testatrix died on December 5, 1916. Mrs. Swasey died on December 7, 1918. The two hundred and forty thousand dollar fund is not yet accumulated. By this part of the trust clause she was to have, during her life, one-twelfth of the income to be derived from said fund after it was accumulated. The direction as to the remainder in said one-twelfth is that if she should die prior to the accumulation, or if then living should afterward die, then, upon her death, the trustees, "out of said fund," should pay one-twelfth thereof to her children "who are then living," meaning those of her children who should be living at her death. The twelfth was to be paid to them out of the fund to be accumulated. There is no express direction that they should have anything until after the accumulation was complete. If their interest in said share does not vest until the fund is accumulated and in the meantime they cannot alienate it absolutely, there would then be a suspension of the power of alienation of that share for a period beyond her life, and this is forbidden by section 715. But their interest vested upon her death. "A future interest is vested when there is a person in being who would have a right, defeasible or indefeasible, to the immediate possession of the property, upon the ceasing of the intermediate or precedent interest."

(Civ. Code, sec. 694.) "A future interest is contingent, whilst the person in whom, or the event upon which, it is limited to take effect remains uncertain." (Civ. Code, sec. 695.) The persons who were to receive the share upon her death became fixed upon that event. They consisted of her children then living. The event upon which they were to take ·was the accumulation of the fund. As an event, this was certain to take place, but the time of its occurrence remains uncertain. The uncertainty of the time of the occurrence of an event, however, does not make an interest contingent; consequently their interest is not contingent under section 695, but is vested as provided in section 694.

This is also indicated by the language of the gift of the remainder to the children, in connection with the context. The payment to them, it is true, is to be made "out of the ·fund," and it might be contended that this indicates an intent that no title to the remainder was to vest until the fund should be on hand. But the terms of the gift also declare that the payment is to be made "upon the death of my sister Amanda A. Swasey," and the provision for the payment of the income from the fund states that the respective shares thereof are to be paid to the recipients named "during their respective lives." These phrases indicate very strongly an intent that the remainders in the respective shares were to vest in the children at the death of their respective parents. [7] In a case of ambiguity or inconsistency the law favors a construction that will cause the gifts to vest, if the opposite construction will render it void. (Chaplin on Suspension, secs. 178, 223, 515; Gray on Perpetuities, sec. 633; Civ. Code, secs. 1317, 1326.) We think these phrases when taken together show that the testatrix intended the respective sets of children to take a vested interest in the remainder immediately upon the death of the parent.

The effect of this part of the clause is that these children stand in the same position as the persons who are to take the specific legacies and the ultimate residue. They do not receive the interest until sufficient property is sold to accumulate the fund, but their interest therein is now a vested interest and may be alienated as in the case of any other property. (Civ. Code, secs. 1039, 1044.) The enjoyment thereof is, of course, postponed until the fund is ac-

cumulated, but the postponement of the time of enjoyment of an interest does not suspend the power of alienation thereof, where no other person has in the meantime any interest in the property. (Gray on Perpetuities, sec. 120; Chaplin on Suspension, sec. 394.) The same conditions will arise upon the death of any of the other beneficiaries of the income of this fund, should they die prior to the accumulation. If they die subsequent thereto, the persons to take become fixed at that time and the power of alienation immediately arises at the end of the period allowed by law; that is, the termination of the life of a person in being at the death of the testatrix. Taking this part of the trust clause alone without qualification from the preceding provisions concerning annuities, it is clear that there is no unlawful suspension of the power of alienation.

[8] It is to be observed that the several trusts in the two hundred and forty thousand dollar fund are separable, and the question whether the power of alienation is suspended is to be considered with reference to each share separately. (Gray on Perpetuities, secs. 389, 391.)

[9] The remaining question is whether or not the provisions disposing of the remainders of the two hundred and forty thousand dollar fund are affected by the preceding directions for the payment of annuities to the brothers and sisters pending the accumulation of the fund. The preceding direction is that the entire net income of the estate from whatever source accruing, including interest received on invested proceeds prior to the complete accumulation of the fund, is to be devoted to the payment of these annuities, amounting in all to nine hundred dollars a month, and that should the income of any month be insufficient to pay them in full, the annuities to Mrs. Lord and Mrs. Schroeder should be paid in full and the balance prorated among the others, but that if afterward the income became more than sufficient, those who had not received the full amount were to have the deficit made up to them out of the surplus. It would seem to follow, therefore, that during the period preceding the accumulation of the fund the other annuitants have an interest in the share of Mrs. Swasey's children, which, under the rules above stated, would prevent the vesting of said children's interest upon the death of their mother. The net income from the entire estate is by these

provisions, in effect, sequestered for application to the payment of annuities to the survivors. Having the effect to prevent the vesting of the interests in the remainders, it would involve the suspension of the power of alienation of that share for the period between the death of Mrs. Swasey and the final accumulation of the fund. The two trusts are to that extent inconsistent. **[10]** It is a typical case for the application of the rule stated in *Nellis* v. *Rickard,* 133 Cal. 622, [85 Am. St. Rep. 227, 66 Pac. 32], to the effect that where there are "several independent trusts, some of which are legal, while others are in contravention of the statute regulating uses and trusts or the statutes against perpetuities, the estate of the trustee will be upheld to the extent necessary to enable him to execute the valid trusts, and will only be void as to the illegal or invalid trusts." It is an application of rule stated in section 1317 of the Civil Code that where the intention of the testator cannot have effect to its full extent, it must have effect as far as possible. The rule is also stated as follows: "Where there are valid and invalid clauses in a will, the question whether the valid clauses can stand depends upon whether or not the invalid ones are so interwoven with them that they cannot be eliminated without interfering with and changing the main scheme of the testator." (*Estate of Pichoir,* 139 Cal. 685, [73 Pac. 606], quoting from *Estate of Fair,* 136 Cal. 81, [68 Pac. 306]. See, also, *Sacramento Bank* v. *Montgomery,* 146 Cal. 747, [81 Pac. 138].) A perusal of the trust clause shows that the preliminary portion providing for the annuities to the brothers and sisters temporarily until the accumulation of the fund was but a minor part of the main scheme of the testatrix. It is temporary in character, in the nature of a family allowance. It was intended merely to provide an income for them during the period of the settlement of the trust. The principal parts of the plan were to provide the fund of two hundred and forty thousand dollars, to divide the income thereof among the brothers and sisters during their respective lives and give the remainder to their children or heirs as specified; to pay the specific legacies mentioned in the succeeding clause and to the residuary legatees the ultimate residue. The preliminary scheme is not essential to the main plan, nor so interwoven with it that the two must stand or fall together. In such a

case the part of the will which conflicts with the main scheme must give way so far as may be necessary to carry out the main scheme. The result is that the interest of the children of Mrs. Swasey in the sum of twenty thousand dollars must be deemed to have vested from her death, that they will be entitled to receive interest on that sum from that time until its final payment, and that the annuities to the surviving brothers and sisters must be paid out of the remaining part of the income after providing for interest on the sum due to the children of Mrs. Swasey. Similar results will follow upon the death of any other of the brothers and sisters prior to the accumulation of the fund.

Our conclusion is that the trusts created by the will are valid and enforceable, except as above stated, that the invalid part does not destroy the devise of the residue to the trustees, and that the court below should have made distribution thereof to said trustees. The trustees will have power after such distribution to make any adjustment rendered necessary to make up to the children of Mrs. Swasey, or to the children or heirs of any other brother or sister who may die before the accumulation of the fund, the amount of interest that may accrue upon their respective vested interests in the fund. The views we have expressed will be sufficient to guide them on this point in the administration of the trust. There is no disputed question of fact involved in the case. More than four years have passed since the death of the testatrix and further delay is not necessary. It is a proper case for this court to exercise its power to direct the action of the court below.

The order of distribution is reversed and it is ordered by this court that upon the going down of the remittitur herein the court below shall forthwith enter an order distributing to the several specific devisees and legatees the specific property devised and bequeathed to them by the will, and distributing the entire residue to the trustees named in the will to be held by them upon the trusts in said will declared.

Lawlor, J., and Olney, J., concurred.

Hearing in Bank denied.

All the Justices concurred except Sloane, J., who did not vote.