*In Re:* ETATE OF W. L. BLOCKS, Deceased; THE EXCHANGE NATIONAL BANK OF TAMPA, as Executor Under the Last Will and Testament of W. L. Blocks, Deceased, JESSE EBINGER, MARY LOVENGREEN, ALETTA HANSON (formerly Aletta Lawson), ADELLA SIEVERTSON (formerly Adella Hoffman), ESTHER B. STEUERLE (formerly Ester Blocks), and ANCIENT ARABIC ORDER OF NOBLES OF THE MYSTIC SHRINE, v. JULIA B. TATRO, GERTRUDE McCUNE, JENNIE BOWERS QUAN, MINNIE E. BOWERS HUNGER, LILLIE E. BOWERS HEN, ARTHUR E. BOWERS, MAGDALENE LINDS-KOG and SADIE B. THIES.

196 So. 410
Division A
Opinion Filed May 24, 1940

164

*Knight & Thompson, Frank P. Ingram, Miller & Peterson, Henry H..Cole* and *Whitaker, Whitaker & Terrell,* for Appellants;

*M. B. Withers* and *Wm. M. Taliaferro,* for Appellees.

THOMAS, J.—W. L. Blocks, a resident of Hillsborough County, died in April, 1939, and soon afterwards, no will having been discovered, First National Bank of Tampa was appointed administrator, in which capacity it still functions. Immediately thereafter an instrument, which will be described more in detail later in this opinion, was found among deceased's papers and presented by Exchange National Bank

to the county judge as a will disposing of the personal property of the testator.

Answers were filed, to the petition for probate of the instrument, containing averments, among others, that the paper offered was not intended as a formal testament, having been prepared by an attorney as a tentative draft for the assistance and convenience of his client in determining the provisions and stipulations which the will would contain when fully drawn for execution. It was alleged that consultations between client and attorney anent preparing a will commenced about September 1, 1928, and that the first, and, as it developed, the only copy of the instrument was mailed to the client on October 3 and signed by him the following day. A few days later the matter was discussed by them and certain proposed alterations were noted on the margin of the instrument. Within the succeeding month the subject was discussed two or three times by Blocks and his counsel whereupon it was dropped for approximately ten years. Shortly before his death, Blocks summoned the attorney to his home and told him he wished a will prepared and would go to the attorney's office for the purpose. He repeated this intention to the attorney on the street the day before his death. The contested instrument was located in a discarded desk and was not among valuable papers kept in a safety deposit box in a bank.

The county judge dismissed the answers and admitted the instrument, except interlineations and revisions appearing to have been made with a lead pencil, to probate as the last will and testament of W. L. Blocks, disposing of personal property. The Exchange National Bank was made executor, having been nominated for that position by the testator.

On appeal to the circuit court from this order, the circuit judge decreed that the cause be reversed. Substance of

the ruling was that the answers and exhibits established that the purported will when signed contained an attestation clause and places for signatures of witnesses who did not sign and a blank space for the insertion of the name of a trustee which was never applied. These circumstances, thought the circuit judge, justified the introduction of evidence to determine whether in fact the signature of Block was affixed *"animus testandi,* the presumption, though slight in force, being against the effectiveness of the paper as the last will and testament of the deceased." The learned judge distinguished the case from the one decided by the court and emphasized by counsel for the respective parties, Brown v. Avery, 63 Fla. 355, 376 South. Rep. 34, Ann. Cas. 1914A 90.

The original paper, the efficacy of which is the crux of the controversy, has been exhibited to us here together with the letter transmitting it and the envelope that carried it in the mail. They were posted at Tampa, October 3, 1928, and the letter bears that date. In this missive the lawyer advised his client that he would be away from his office on a trip to a distant city and asked that the proposed draft of the will, which he "had prepared * * * in the shape that I understood you wanted it," be examined and that the addressee make "pencil memoranda on it as to any parts that do not meet with your approval * * *." One paragraph of the letter follows:

"This draft is not in final form by any means, but it is an attempt to outline my understanding of your desires with regard to the disposition of your estate."

To determine this point it is unnecessary to detail the contents of the paper other than to observe that there are some interlineations and erasures and the name of a trustee, to serve with two others whose names appear in the type-

written form, was not inscribed. The day and year of signature by Blocks were inserted in ink. Following his signature is an attestation clause with the month and year included but the day left blank as are also the spaces provided for signatures and residences of the witnesses.

It is not contended by appellants that the will was effectual as to real property and no doubt has been cast by appellees upon the genuineness of the signature of the deceased. The actual question is whether the litigants who filed answers should have been given the opportunity to offer testimony that the will did not indicate the real intent of the testator because of the uncompleted attestation clause, the subsequent conversations with the attorney, the letter accompanying the paper and referring to it as a tentative draft and the location of the instrument in an unused desk instead of the safety deposit box with other papers of consequence.

Counsel for appellants as well as those for appellees have drawn our attention to Brown v. Avery, *supra,* where the essential facts were not unlike those involved here. No benefit would be gained by repeating them here but the same principles are applicable to both, namely, that the intention of the testator is the all-important factor in the construction of a will; that this should be gleaned from the will if possible, and that parol evidence may not be resorted to except in cases of ambiguity.

In the cited case a codicil was produced by which the testator sought to change a properly executed will disposing of real and personal property. The latter instrument was ineffectual as to realty because not witnessed but was held to dispose of personalty. One of the grounds urged in resistance to probate was that the codicil affected one class of property but not the other, although the testator mentioned

both, hence that the writing did not reflect his true intention. Another objection was that the instrument signed was intended only as a memorandum for the use of an attorney in the preparation of a document in proper form and that although he received the so-called memorandum and prepared a formal codicil for execution by testator and subscribing witnesses and sent it to his client she left it among her papers unexecuted.

It is true that those facts are not identical with the ones here but it seems to us that they are no more relevant to the principle involved.

The intention of Blocks should be determined from the will without the aid of parol testimony and it is not contended that there is ambiguity in the paper itself but only that the failure to complete the execution by subscribing witnesses indicated that the testator did not mean that the whole plan should carry, therefore all of it should fail.

The real intention of the testator being the lode-star for decision of cases of this nature, we should not be chary of allowing an inquest into what the testator actually had in mind when he contemplated the distribution of his bounty. We fully realize the difficulty of gainsaying that it was his intention that the will should not be of any effect until it was witnessed, or that he did not purposely disregard the subscription by witnesses because the provisions relative to personalty were acceptable while those dealing with realty were not, particularly when the testator retained it ten years without revision and it is his only written expression on the subject.

We recognize, however, the authorities, cited by the circuit judge in his opinion, holding where a will disposing of real and personal property concluded with an unexecuted attestation clause, even though witnesses are unnecessary to make

it effective as to the personalty attempted to be bequeathed, a slight presumption arises that the will is incomplete and does not reflect the testator's true intent. Barnes v. Syester, 14 Md. 507; Mealing v. Pace, 14 Ga. 596; *Ex Parte* Henry, 24 Ala. 638. The presumption being slight may be overcome by circumstances of the same degree.

Such a conclusion does not seem to conflict with Brown v. Avery, *supra,* when a comparison of the facts is studied or with the case of Toebbe v. Williams, 80 Ky. 661, cited therein. This view is also not inconsistent with pronouncements of the regard which should be given final expressions of persons with reference to dispositions at death of worldly goods accumulated in life.

We pass to the cross assignments of error challenging the propriety of rulings on the sufficiency of paragraphs seven and eight of the answers charging that the general plan of the testator would be defeated by administration of only the personal property under the will and that the testamentary provisions so confused the property of both classes that the decisions of both courts would frustrate the testator's general design.

These assignments of error present another phase of the rule with reference to the validity of wills as to one kind of property where invalid as to another. It is said that where partial validity is present the whole will must fall if the provisions affecting each class cannot be separated, if injustice will be done beneficiaries or if the general design of the testator will be frustrated.

The purported will contained provisions of the devise, gift and bequest to each of three nieces of a one-ninth interest in the estate and to a brother-in-law of a certain "Ship's agent and Stevedoring business." The residuary estate was left to the bank as trustee with power to convert into cash

and to invest. The trustee was given directions to pay periodically to a former wife one-half the income. Upon her death "one-half of this portion" was required to be paid to other trustees, they to use so much of it as might be necessary in the purchase of a tract of land for an orphanage and the remainder for erection of a building thereon to accommodate orphans. The other half of "the income from such portion" of the estate was to be paid at regular intervals to a sister of the testator and upon her death to trustees of "Ancient Arabic Order of the Mystic Shrine" for establishment of a hospital for crippled children.

We do not find in these provisions such an inseparable commingling of real and personal property as would do violence to the rule we have given if the will is sustained as to the personalty (*In re:* Pichoirs' Estate, 139 Cal. 682, 73 Pac. Rep. 606). In such event it seems practical for the property of this character to be administered under the terms of the will and the realty to be disposed of under the law regulating disposition where the owner dies intestate.

It is ordered that the decree of the circuit judge be—

Affirmed.

TERRELL, C. J., and BUFORD, J., concur.

WHITFIELD, J., concurs in opinion and judgment.

Justices BROWN and CHAPMAN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.