[L. A. No. 8257. In Bank.—March 20, 1925.]

In the Matter of the Estate of JOHN S. MALTMAN, Deceased. TITLE GUARANTEE & TRUST COMPANY, Executor, etc., Appellant, v. RAY L. RILEY, State Controller, et al., Respondents.

[1] ESTATES OF DECEASED PERSONS — WILLS — TRUSTS — RESTRAINT ON ALIENATION—CONSTRUCTION—TIME.—Under sections 715 and 716 of the Civil Code forbidding the suspension of the power of alienation beyond the time therein specified, the date of the death of the testator whose will contains provisions for the creation of such conditions, limitations, estate or interest is the date fixed by said sections for the purpose of determining their validity.

[2] ID.—CONSTRUCTION—POSSIBILITY OF SUSPENSION OF POWER OF ALIENATION.—Sections 715 and 716 of the Civil Code do not permit waiting to see whether events may not so transpire that in fact no perpetuity results, but if under the terms of the deed or will creating the trust, when properly construed, the instrument by any possibility may suspend the absolute power of alienation beyond the continuance of lives in being, the instrument, whether a deed or will, is void, and no trust is created nor any estate vested in the trustee.

[3] ID.—EXTENSION TO LIFE OF UNBORN CHILD—VOID LIMITATION.— Where a trust created by a will can be given no other interpretation than that of evincing the testator's intention that the trust as to part of the estate shall continue until the death

---

1. The rule against perpetuities, note, 49 **Am. St. Rep.** 117.
Perpetuities forbidden in the United States, note, 90 **Am. Dec.** 101. See, also, 21 **R. C. L.** 335; 20 **Cal. Jur.** 1042.

of the last child born or to be born to one of the beneficiaries, the provision is void as an illegal suspension of the power of alienation, under sections 715 and 716 of the Civil Code.

[4] ID.—CONSTRUCTION.—Where a testator by his will creates a trust by which one-half of the residue of the estate is to be distributed to a trustee for the benefit of his daughter and her daughter and the other one-half for the benefit of his son and the latter's children, in determining whether the trust provides for an illegal suspension of the power of alienation, the principle of interpretation that if the trust in favor of the daughter and her daughter did not violate the statute, the testator is not to be held to have intended to do so in the creation of the trust in favor of his son and the latter's children, would be applicable to language of doubtful meaning but does not apply to language which is not doubtful.

[5] ID.—POWER TO SELL TRUST PROPERTY.—Power given a trustee to sell the trust property and reinvest the proceeds does not relieve such trust from the provisions of the code suspending the power of alienation beyond the time therein provided.

[6] ID.—VALID TRUST—LIMITATION TO PERSONS IN BEING.—A trust created by will as to a portion of the estate in favor of a named daughter of the testator and "her daughter," providing that the trust as to this portion of the property shall terminate upon the death of both of the beneficiaries cannot be construed to apply to persons other than those in being and in itself would be valid.

[7] ID.—CONSTRUCTION OF WILL AS A WHOLE — INVALID TRUST — EFFECT OF.—Where the will of a testator clearly shows the latter's intention to devote his estate and the income thereof equally between his two children, and that an equal one-half thereof shall pass through the medium of a trust sought to be created to the offspring of each, but the trust in favor of the testator's son and the latter's children is void because it contains an illegal suspension of the power of alienation, the whole trust must be held to be void, although that in favor of the testator's daughter, standing alone, would be valid.

[8] ID.—INVALID PARTS OF WILL—EFFECT ON WHOLE WILL—RULE.— When a will is good in part and bad in part, the part otherwise valid is void if it works such a distribution of the estate as, from the whole testament taken together, was evidently never the design of the testator.

[9] ID.—VALID TRUST—RESTRAINT ON ALIENATION.—The contention that, even though a trust created by will is void in whole or

5.  See 21 R. C. L. 336.

8.  Invalid clause in will against perpetuities as affecting clauses otherwise valid, note, 3 Ann. Cas. 951.

in part as violative of the statute against perpetuities, it may still be upheld as to the beneficiaries thereof actually in being at the time of the creation of said trust, cannot be maintained.

(1) 30 Cyc., p. 1520, n. 88.   (2) 30 Cyc., p. 1520, n. 88.   (3) 30 Cyc., p. 1520, n. 88.   (4) 40 Cyc., p. 1382, n. 63.   (5) 30 Cyc., p. 1520, n. 88.   (6) 30 Cyc., p. 1520, n. 88.   (7) 40 Cyc., p. 1420, n. 54.   (8) 40 Cyc., p. 1419, n. 50.   (9) 30 Cyc., p. 1520, n. 88.

APPEAL from a decree of distribution of the Superior Court of Los Angeles County. John Perry Wood, Judge. Affirmed.

The facts are stated in the opinion of the court.

John F. Keogh and Frank H. Snyder for Appellant.

U. S. Webb, Attorney-General, Erwin P. Werner, Adrian C. Stanton, George S. Dennison, D. H. Laubersheimer and John H. Riordan for Respondents.

RICHARDS, J.—This appeal is from an order and decree of distribution. The decedent, a widower, died intestate leaving surviving him as his only heirs at law two children, his son, John W. Maltman, and his daughter, Teresa Maltman Kennard. His said son at the time of the making of the decedent's will was married and had two children. Subsequent to the execution of his father's will another child was born to his said son and he, his wife and children, were living at the time of the father's death. The daughter of the deceased was also married at the date of the father's will and had one child, a daughter, and the husband, mother and daughter were alive when the testator died. By the terms of his will he devised his entire estate of which he should die seised to the Title Guarantee & Trust Company of Los Angeles, a corporation, "to be held by it upon the following trusts and not otherwise, to wit. Said Trustee shall manage and care for all such estate, and collect the income thereof; and is hereby given full power to sell and convey all said estate, or any part thereof, at any time, without any order of court whatsoever, and to reinvest the proceeds. I request that such estate be sold and turned

into good interest-bearing securities, as soon as the market favors such sales. I make the following bequests as a token of high appreciation of their most kind, devoted and valuable service to me in time of my distress and need. To Dick Sutton of said County and State, One thousand (1,000) Dollars. To Mrs. Agnes H. Pleasance of said County and State, One thousand (1000) Dollars. After paying the expenses of said Trust, the up-keep of said estate and said bequests, the Trustee shall pay the net balance of the income derived, from time to time, to my said two children share and share alike, so long they shall live; all such payments to be made quarterly, namely, every three months. Upon the death of said Teresa, leaving her husband E. H. Kennard and her daughter, or either of them surviving, then her said share is to be paid quarterly, share and share alike to such husband and daughter, and the the survivor of them, so long as they or either of them shall live. Upon the death of said John leaving a wife and children or any of them surviving, then his said share is to be paid quarterly, share and share alike, to such wife and children and to the survivors and survivor of them, so long as they, or either of them shall live. It is my will that said Trust shall cease and terminate as follows, to wit, First on one-half of the remainder of said estate; then on the other half of said estate, that is to say, when said Teresa and husband and child shall have died, said Trust shall cease and terminate on one-half of such estate, and thereupon be distributed according to the laws of the State of California; and so when said John and his wife and all his children shall have died, said Trust shall cease and terminate on one-half of said estate, meaning the other half if said Teresa, her husband and child shall have died and said Trust had terminated on one half. Meaning and intending that said Trust shall wholly terminate on the entire estate when said Teresa and John and their said families shall have died, and that all the remainder of said estate shall be distributed in accordance with the law of inheritance of the State of California. Said Trustee shall be the sole judge of what constitutes one-half of said estate, and what half shall first be sold or prepared and distributed as above provided. I particularly request and direct that such legatees shall not anticipate their income by any bargain and sale, or pledge to secure advances or loans on same,

and that said Trustee shall make payment to each one in person, whenever practical, and not to their order. Any attempt to break this my Last Will and Testament or contest any of its provisions shall operate to extinguish all rights and share of my estate, in and to such contestant or contestants, and any and all such contestants shall have no part thereof. I request and direct that my body be cremated and the ashes thereof be deposited in an urn and placed in the Maltman family plot in Rosedale Cemetery, in the City of Los Angeles. I hereby nominate and appoint the said Title Guarantee and Trust Company as Executor of this my Last Will and Testament.''

The said will of the testator was duly admitted to probate and was duly administered upon up to the time when the estate was practically ready for final settlement and distribution, whereupon the inheritance tax appraiser filed his report and appraisement in said estate wherein he based his estimate of the amount of inheritance tax upon his contention, as expressed therein, that the trust provided for in the said will was invalid as in violation of the provisions of section 715 of the Civil Code. The final account and petition for distribution of said estate were filed shortly thereafter and to said account and petition the state controller filed his written objections based upon the same ground as that embraced in the report of the inheritance tax appraiser, and it was stipulated between the parties, through their respective counsel, that the hearing upon the said report of the inheritance tax appraiser be had at the time of the hearing upon the petition for final distribution and of the objections of the state controller thereto. These matters were, accordingly, heard together and the decision upon both was embraced in the body of the order and decree of distribution wherein the court adopted the report of the inheritance tax appraiser, sustained the objections of the state controller to the form of the final account and petition for distribution as filed, holding the trust void *in toto* and directing that the entire estate, after the payment of the special bequest, be distributed under the laws of succession, one-half to the son, John W. Maltman, and one-half to the daughter, Teresa Maltman Kennard, and that the inheritance taxes be computed upon the basis of such succession. The trust company both in its capacity as executor and as trustee

under the said will has appealed from said order and decree of distribution, thus presenting for our determination the question as to whether said will except as to said special bequests is void as creating a perpetuity in violation of the provisions of said section of the Civil Code. An examination of the trust provisions of said will as above set forth discloses that a trust is thereby created, by the terms of which one-half of the residue of the testator's estate was to be distributed to the trustee named for the benefit of his daughter, Teresa Maltman Kennard, and her daughter, and the other one-half of said estate was to be distributed to the same trustee for the benefit of his son, John W. Maltman, and his children. We shall consider the latter first in the light of the respondent's contention that a perpetuity was thereby created in contravention of the provisions of section 715 of the Civil Code. The language of this latter provision of said will is not ambiguous or uncertain so as to require resort to other sources than the language of said will itself for its interpretation. In this portion of said will the testator devises one-half of his estate to said trustee upon the trust to manage, conserve, sell and invest the proceeds of the same in good interest-bearing securities and to pay the net balance of the income derived therefrom to his said son so long as he should live. The will proceeds: "Upon the death of said John leaving a wife and children or any of them surviving, then his said share is to be paid quarterly, share and share alike, to such wife and children and to the survivors and survivor of them, so long as they, or either of them shall live . . . and so when said John and his wife and all his children shall have died, said Trust shall cease and terminate on one half of said estate, meaning the other half if said Teresa, her husband and child shall have died and said Trust had terminated on one half. Meaning and intending that said Trust shall wholly terminate on the entire estate when said Teresa and John and their said families shall have died.''

Section 715 of the Civil Code provides as follows:

"Except in the single case mentioned in section seven hundred seventy-two, the absolute power of alienation cannot be suspended, by any limitation or condition whatever, for a longer period than as follows:

"1. During the continuance of the lives of persons in being at the creation of the limitation or condition; or

"2. For a period not to exceed twenty-five years from the time of the creation of the suspension."

Section 716 of the same code reads:

"Every future interest is void in its creation which, by any possibility, may suspend the absolute power of alienation for a longer period than is prescribed in this chapter. Such power of alienation is suspended when there are no persons in being by whom an absolute interest in possession can be conveyed."

It is not necessary to again indulge in an elaborate review of the history or proper interpretation of these two sections of the Civil Code. That was done at much length and with great learning in the leading case of *Estate of Walkerly*, 108 Cal. 627 [49 Am. St. Rep. 97, 41 Pac. 772], from the reasoning of which there has been no material departure since its decision thirty years ago. Two particular clauses found in these sections of the Civil Code have been given more exact definition in later cases. One of these is the clause found in both of these sections referring to the "creation" of the limitation, condition, estate or interest affected by the inhibition of these code provisions. [1] In *Estate of Whitney*, 176 Cal. 12 [167 Pac. 399], it was held that the time of the death of the testator whose will contained provisions for the creation of such condition, limitation, estate or interest was the date fixed by these code sections for the purpose of determining their validity (Civ. Code, sec. 749). The court in that case quoted approvingly from *Estate of Steele*, 124 Cal. 533, 537 [57 Pac. 564]. [2] The language of the court in that case to the effect that "The statute does not permit us to wait and see whether events may not so transpire that in fact no perpetuity results, but if under the terms of the deed or will creating the trust, when properly construed, the instrument 'by any possibility may suspend' the absolute power of alienation beyond the continuance of lives in being, the instrument, whether a deed or will, is void, and no trust is created nor any estate vested in the trustee." We thus have also a judicial interpretation of the other clause in said section of the code, viz.: "by any possibility." It is important that each of those particular clauses of these sections of the Civil Code

should be borne in mind as we approach the interpretation
of the provisions of the will of the decedent in so far as
it relates to the trust attempted to be created in favor of
his son John and his descendants. It is also to be borne in
mind that it is a conceded fact in this case that at the
date of the execution of his father's said will and also at
the date of his death John W. Maltman was married; that
his wife was living; that he was the father by her of two
children at the time said will was executed and that a
third child was born to these parents between that date
and the date of the death of the testator and that at all
of these times these parents were capable of begetting and
bearing other children. Turning to the provisions of the
will having particular reference to the trust proposed to
be created for the benefit of John W. Maltman, his wife,
and his children, we find therein no limitation nor any ap-
parent attempt to limit the trust estate to the lives of those
in being either at the date of said will or at the date of
the death of the testator. The will provides that during
the life of the testator's son John one-half the net income
arising from the investment of the substance of his estate
by his said trustee shall be paid to his son John; and that
"Upon the death of said John leaving a wife and children
or any of them surviving, then his said share is to be paid
quarterly, share and share alike, to such wife and children
and to the survivors and survivor of them, so long as they,
or either of them shall live." The will continues "and so
when said John and his wife and all his children shall have
died, said trust shall cease and terminate." [3] This lan-
guage in the testator's will is so clear and explicit as to
seem to leave no doubt in our minds that considering the
foregoing provisions of said will by themselves they can be
given no other interpretation than that of evincing his
intention that the trust created by his said will as to this
half of his estate should continue until the death of the last
child born or to be born to his son John and his said or any
wife. If the aid of authority is needed to enforce this con-
clusion it is to be found in the decision of this court in
*Estate of Van Wyck*, 185 Cal. 49 [196 Pac. 50] between
which and the instant case, in every material respect, no
distinction can be drawn. It is, however, the appellant's
contention that in determining the meaning to be given

to this particular portion of the testator's will the entire
will is to be taken into consideration with a view to deter-
mining the testator's intent in the use of the particular
language used in the portion of it under immediate review;
and that if we should hold that as to the portion of said will
which purported to create a trust in favor of his daughter,
Teresa, and of ''her daughter,'' the testator did not create an
estate beyond the lives of those in being, he is not to be held
to have intended to do so in the creation of the trust in favor
of John and ''his children.'' **[4]** While it is true that
the principle of interpretation of instruments invoked by
the appellant is correct in its application to those portions
of such instruments in which the language used by the
testator is of doubtful meaning, it does not go to the extent
of controlling the meaning to be given to those particular
provisions of the instrument wherever the language used
by the testator in dealing with the immediate subject con-
veys no doubtful meaning, and hence requires no recourse
to other portions of the instrument to determine the inter-
pretation to be given to its plain and unmistakable terms.
Aside from this, however, if the interpretation for which
the appellant contends should be given to the portion of the
testator's said will creating a trust in favor of his son John
and ''his children'' and continuing said trust in force and
effect until the death of his said son John and his wife
and ''all his children,'' it would have the effect of imputing
to the testator the intent of limiting his benefaction to the
children of his son John in being at the time of the execu-
tion of his said will to the exclusion not only of the child
born to his said son after the date of said instrument, but
prior to the testator's death, and also to the exclusion of
any later children born to him after the decease of his
father. The imputation of such an intent does violence
to the manifest intent of the testator that his son John,
his wife and all his children should have an equal share in
the benefits to be derived from the execution of said trust, so
long as any of them should live. Such an interpretation,
to use the language of this court in the case of *Estate of
Von Wyck, supra,* applied to a precisely similar situation,
would be ''an unnatural and unreasonable provision, and
one contrary to the natural meaning of the language used.''
Our conclusion, therefore, is that as to the provisions in said

will which purport to create a trust in favor of John W. Maltman, his wife, and his children, they are obnoxious to the terms of section 715 of the Civil Code relating to perpetuities and are void. **[5]** In so holding we have in mind the contention of the appellant herein that the provision in said will empowering the said trustee to sell and convey all of the real estate bequeathed to it in such trust and to reinvest the proceeds in interest-bearing securities would have the effect of relieving such trust from the inhibitions of said section of the Civil Code, but we consider that this contention is fully met by the provisions of section 771 of the Civil Code, which reads as follows:

"The suspension of all power to alienate the subject of a trust, other than a power to exchange it for other property to be held upon the same trust, or to sell it and reinvest the proceeds to be held upon the same trust, is a suspension of the power of alienation, within the meaning of section seven hundred and fifteen."

**[6]** The next question presented for our consideration is that relating to those portions of the testator's will which purport to create a trust affecting the other one-half of his estate in favor of his daughter Teresa Maltman Kennard and "her daughter." It will be at once perceived that an entirely different intent is here manifested on the part of said testator. The specific persons for whose benefit this portion of said trust is created are defined. There is no room for a conclusion that the testator in attempting to create this particular portion of said trust intended it to apply to any other person or persons then in being or thereafter to come into being than the two designated beneficiaries thereof, viz.: his daughter Teresa and "her daughter." The fact that he does not mention the latter by name conveys no reasonable implication that he intended to embrace within the designation "her daughter" other offspring than the one already borne by his said daughter Teresa and in being at the date of his will. We would have no hesitancy therefore in holding this portion of said trust to be valid, were it not for the difficulty in so doing which springs from our conclusion that the provisions of said will relating to the trust sought to be created in favor of the son of the testator and "his children" are void. This conclusion compels us to a determination of the question as to whether the

entire trust must not therefore be held void for the reason that the two portions or provisions thereof are inseparable. [7] Reading the will of the testator as a whole there can be no doubt that it was his intention thereby to divide his estate and the income thereof equally between his two children and that an equal one-half thereof should pass through the medium of the trust sought to be created to the offspring of each. But if, as we have held, the trust attempted to be imposed upon the one-half of his said estate for the benefit of his son John and "his children" is for the reasons stated void; and if for the further reasons stated the trust sought to be created for the benefit of his daughter Teresa and "her daughter" were to be held valid, it is unavoidably apparent that this intent on the part of the testator would be subverted, and this for the reason that the bequest to the trustee of the one-half of said estate intended for the benefit of John and his children having failed, that portion of the estate would remain undevised and hence would pass to the heirs of the ancestor under the laws of succession, in which event his natural heirs, John and Teresa, would be entitled to share equally in said undevised portion of their ancestor's estate, by which division thereof upon the distribution of said estate Teresa would receive not only the benefit, as a *cestui que trust,* of the one-half thereof devised to the trustee, but would also be entitled to receive one-half of the remaining undevised portion of said estate under the laws of succession. This would have the result of distributing three-fourths of the ancestor's estate directly and indirectly to Teresa, and one-fourth thereof to John, a consequence clearly in violation of the intent of the testator in making said will. We are thus driven to the conclusion that the provisions of said will in so far as they purport to create a single trust for the management and conduct of the testator's entire estate, sale of its properties and investment of its funds for the expressed purpose of having his son and daughter have each an equal share in the income thereof during each of their lives and of having their respective offspring also share equally in the respective portion thereof held in trust for their parents' benefit respectively, and of having each one-half of his said estate distributed under the law of inheritance upon the eventual termination of said trust, are so far inseparable that the

holding of the one portion thereof void, as in violation of the statute against perpetuities, invalidates the entire trust. We are not without authority in arriving at this conclusion. In *Estate of Van Wyck, supra,* in which a much similar situation was presented, this court said: ''The real question presented where a will contains both valid and invalid provisions is whether the two are so parts of a single plan or scheme or otherwise so dependent one upon the other that by avoiding the invalid provisions and allowing the valid to stand there will result a disposition of the estate so different from what the testator contemplated or so unreasonable that it must be presumed that the testator would not have made the valid provisions if he had been aware of the invalidity of the others. The rule in fact is frequently stated more strongly against allowing the valid provisions to stand than we have just stated it. Thus, in *Estate of Fair,* 132 Cal. 540 [84 Am. St. Rep. 70, 60 Pac. 549], it is said: 'The question whether the valid clauses can stand depends upon whether or not the invalid ones are so interwoven with them that they cannot be eliminated without interfering with and changing the main scheme of the testator. In *Darling* v. *Rogers,* 22 Wend. (N. Y.) 495, Senator Verplanck correctly stated the rule as follows: [8] ''When a will is good in part and bad in part, the part otherwise valid is void if it works such a distribution of the estate as, from the whole testament taken together, was evidently never the design of the testator. . . . '' ' ''

It is clear to our minds in the light of the foregoing authorities that our holding that the portion of the testator's said will purporting to create a trust in an undivided one-half of his estate for the benefit of his son John and his children is void as in contravention of the statute against perpetuities, so far destroys the scheme and purpose of the testator in the creation of said trust affecting his entire estate that said trust must be declared invalid *in toto,* notwithstanding the fact that it might otherwise have been declared valid in so far as its provisions affected the rights of his daughter Teresa in the portion of said estate upon which said trust was imposed for her benefit.

[9] The appellant makes the further point that even though it should be held that said trust is void in whole

or part as violative of the statute against perpetuities it may still be upheld as to the beneficiaries thereof actually in being at the time of the creation of said trust; but this contention will be found to be sufficiently disposed of by what this court has said in *Estate of Van Wyck, supra,* wherein the same contention was urged.

The order and decree appealed from are and each of them is affirmed.

Seawell, J., Myers, C. J., Waste, J., Lawlor, J., Shenk, J., and Lennon, J., concurred.