W.J. Hartwig died testate April 15, 1939, leaving, as his heirs at law, his widow Mrs. W.J. Hartwig, Wallace B. Hartwig, son, Charles B. Hartwig, a son, Elizabeth Hartwig McConnell, a daughter, Isabelle Hartwig Sutton, a daughter, John Hartwig and Annette Hartwig, grandchildren, the children, a son and daughter of his son Raymond, who pre-deceased testator.
The will of the deceased duly admitted to probate May 9, 1939, after providing for the payment of his debts and funeral expenses and the making of several specific legacies, gave to his wife, if she survive him, all his personal property, and provided that his son Wallace B. Hartwig should have a three-year option to buy the Hartwig Theatre in Dillon, Montana at a stated price. By clause 7 of the will he gave to his wife a life estate in all his real property, including the Hartwig Theatre, if it should remain in his estate. Clauses 8 and 9, the construction of which are in dispute are as follows:
"Clause 8. In the event that my wife shall not be surviving at the time of my death, or if she shall survive then upon her death her life estate, in my real property shall cease and terminate. In either such event to-wit; the death of my wife without her assuming the life estate, or upon her death and *Page 361 
the termination of the life estate, all my real estate and property in which my wife had or would have a life estate, I give, devise, and bequeath in trust to the executor of this, my last Will and Testament. The real estate thus devised, shall be held in trust for the period of ten years, from and after the death of my wife, if she shall survive me or from and after my own death, if my wife shall pre-decease me. My said executor, who is thus to become a trustee, holding the real property, shall have no power to alienate or convey the real estate or mortgage or hypothecate it (except to sell the Dillon Theatre under Clause 6) but he shall hold real property in trust, keeping the same rented and looking after and caring for the same, in a businesslike manner. After paying the expenses of handling the real property, so held in trust, together with his own expenses and a monthly compensation to himself of Fifty ($50.00) Dollars per month, my executor-trustee shall divide the net returns from the real property equally among my surviving children, heirs of the body, including my executor-trustee, Wallace B. Hartwig. If any child shall be deceased (including Raymond) leaving heirs of the body, such child or children, shall take the parent's part, taking per stirpes and not per capita. But if deceased without heirs of the body, that child's interest shall cease. The payment of this income from the real property to the children, shall be not later than annually, but may be monthly, quarterly or semi-annually, as those entitled shall unanimously agree, and so request in writing.
"Clause 9. At the end of the ten-year period during which my executor-trustee shall hold the title to my estate, as provided in Clauses 5 and 6 in this, my last Will and Testament, my real estate may then be sold at public or private sale as all of my then surviving children, heirs of the body, may determine. Any sale to be only by unanimous consent of all such surviving children, and at such end of the ten-year period, all cash and personal property that may be then in the hands of my executor-trustee and the proceeds from the sale of the real *Page 362 
estate, if sale shall be made, or the real estate itself, if there shall have been no sale, I give, devise and bequeath and it shall be distributed in equal shares, share and share alike to my beloved children, Isabelle (Hartwig) Sutton, Elizabeth (Hartwig) McConnell, Wallace B. Hartwig and Charles B. Hartwig, and the children of my deceased son, Raymond J. Hartwig. The children or surviving child of my son Raymond to take or inherit only what would have been their father's part had he survived me. In the event that any of my children shall be deceased and shall leave surviving children, heirs of the body, such surviving child or children, heirs of the body (my grandchild or grandchildren) are to have and take their parent's part or interest, taking per stirpes and not per capita, but if deceased without heirs of the body that child's interest shall cease."
Mrs. W.J. Hartwig died July 18, 1944, and Charles B. Hartwig died November 8, 1939, without issue. He left surviving him his wife, Blanche Hartwig, who later married and is the appellant Blanche Hartwig Eickemeyer.
In the Court below the appellant interposed objections to the petition for final distribution, and of these only one is of importance here, namely, "that the last will and testament of W.J. Hartwig attempts to create a trust in direct conflict with the laws of the State of Montana, and particularly with Sections 6705 and 6706 RCM 1935 * * *." The lower court overruled all the objections and decreed distribution of all the real property to Wallace B. Hartwig, trustee, pursuant to the terms of the will. From this decree Blanche Hartwig Eickemeyer appeals.
The sole question to be determined is: Do the terms of the trust created by Clauses 8 and 9 of the will suspend the absolute power of alienation of the property therein devised for a period greater than the continuance of the lives in being at the time of the creation of the limitations or conditions expressed in the trust? If they do, then the trust is void and, as to the property therein devised, W.J. Hartwig died intestate. *Page 363 
It will aid the understanding to first set forth the applicable sections of our civil code.
"A will is to be construed according to the intention of the testator. * * *." Section 7016, Revised Codes of Montana 1935.
"The alsolute power of alienation cannot be suspended, by any limitation or condition whatever, for a longer period than during the continuance of the lives of persons in being at the creation of the limitation or condition. * * *." Section 6705, Revised Codes of Montana 1935.
"Every future interest is void in its creation which, by any possibility, may suspend the absolute power of alienation for a longer period than is prescribed in this chapter. Such power of alienation is suspended when there are no persons in being by whom an absolute interest in possession can be conveyed." Section 6706, Revised Codes of Montana 1935.
"The delivery of the grant, where a limitation condition, or future interest is created by grant, and the death of the testator, where it is created by will, is to be deemed the time of the creation of the limitation, condition, or interest, within the meaning of this part of the code." Section 6721, Revised Codes of Montana 1935.
"The suspension of all power to alienate the subject of a trust, other than a power to exchange it for other property to be held upon the same trust, or to sell it and reinvest the proceeds to be held upon the same trust, is a suspension of the power of alienation, within the meaning of section 6705," Section 6733, Revised Codes of Montana 1935.
"A testamentary disposition to a class includes every person answering the description at the testator's death; but when the possession is postponed to a future period, it includes also persons coming within the description before the time to which possession is postponed." Section 7036, Revised Codes of Montana 1935.
"Where a trust in relation to real property is expressed in the instrument creating the estate, every transfer or other act *Page 364 
of the trustee, in contravention of the trust, is absolutely void." Section 6796, Revised Codes of Montana 1935.
Stated affirmatively, the provisions of sections 6705 and[1] 6706, supra, allow the suspension of the absolute power of alienation for the period during the continuance of lives of persons in being at the creation of the limitation or condition, and no longer.
Upon the death of Mrs. W.J. Hartwig July 18, 1944, if the[2] trust be valid, title to the trust property vested in Wallace B. Hartwig, as trustee. The beneficiaries take no interest in the estate itself, but during the term of the trust are vested only with the right to enforce its terms. In re Murphy's Estate, 99 Mont. 114, 43 P.2d 233. The language used in creating the trust and suspending the power to alienate the trust property is clear, precise and admits of no interpretation other than the testator intended to suspend the absolute power of alienation of the property devised to his trustee, and that he effectively did so. Any conveyance of the trust property by the trustee would be in direct conflict with the express limitations of the trust and would, under the provisions of section 6796, supra, be void. A deed of the trust property by all of the beneficiaries named in the trust and in being at the time of the creation of the limitation would convey nothing. There are no persons in being by whom an absolute interest in possession of the trust property can be conveyed. The suspension of the absolute power of alienation is accomplished. Section 6706, supra.
Was the period of suspension of the absolute power of[3] alienation longer than the designated lives in being? Duration of lives in being must be the ultimate measure of the period of suspension, and it matters not what other measure be taken, so long as the period of suspension of alienation cannot extend beyond the duration of lives in being. Time alone cannot be the measure of the period of suspension of the power of alienation. Designated lives in being must in some form be the measure of such period. In re Walkerly's Estate, *Page 365 108 Cal. 627, 41 P. 772, 49 Am. St. Rep. 97; Crew v. Pratt,119 Cal. 139, 51 P. 38; In re Henry's Estate, 118 Cal. 656,50 P. 753; Otis v. Arntz et al., 198 Mich. 196, 164 N.W. 498; In re Rong's Estate v. Haller, 109 Minn. 191, 123 N.W. 471, 26 L.R.A., N.S., 825; Casgrain v. Hammond, 134 Mich. 419, 96 N.W. 510, 104 Am. St. Rep. 610; 41 Am. Jur. sec. 15, p. 61.
The Court cannot indulge in the probability that the named[4] beneficiaries in the trust in being at the time of its creation or their survivor or survivors will be alive at the end of the ten-year period and thereby save the trust. Quite the contrary. If by the terms of any instrument there be any possibility of the absolute powers of alienation being suspended for a longer period than the designated lives in being, the instrument in so far as it creates such a limitation is void. Section 6706, supra. Sections 715 and 716 of the Civil Code of California are identical with the sections 6705 and 6706, respectively, Revised Codes of Montana 1935, and in the case of In re Troy's Estate, 214 Cal. 53, 3 P.2d 930, 932, the court said: "It has frequently been stated that the provisions of section 716 of the Civil Code do not permit us to wait and see what happens in order to determine the validity or invalidity of the limitation. It is the possibility of the event that will suspend unlawfully the power of alienation which serves to void the limitation at the time of its creation." In re Steele's Estate, 124 Cal. 533, 57 P. 564; In re Maltman's Estate,195 Cal. 643, 234 P. 898. The same rule of interpretation is applied in construing the rule against perpetuities. In re Friday's Estate, 313 Pa, 328, 170 A. 123, 91 A.L.R. 766, and cases there cited.
Appellee invokes the presumption that the testator intended to[5] make a valid devise, where the language of a will or a part thereof is reasonably susceptible of two constructions, one of which will invalidate it and the other sustain it, the latter construction, if consistent with the testator's intention, and the rules of law, must be adopted. To invoke this rule of construction and to sustain the trust, appellee contends that its *Page 366 
provisions should be construed to include, as beneficiaries, only the children of his deceased children living at his death; that an equitable estate vested in such beneficiaries to the exclusion of future-born grandchildren of the testator. Thus construed, he argues, the trust would be valid, since if all the lives in being should die before the end of the ten-year period, the trust, by operation of law, would terminate for lack of a beneficiary, and lives in being would be the measure of the duration of the period of the suspension. But the premise for this conclusion is not here present. It is entirely possible, indeed probable, that grandchildren of the testator will be born after his death; that the designated beneficiaries in being at the time of the creation of the limitation should all die within the ten-year period, leaving surviving them such grandchildren, and the absolute power of alienation be suspended for a period greater than the designated lives in being at the time of the creation of the limitation. The intention of the testator in this respect is clear, precise and free of doubt. His words are, in paragraph 8 of the will, that "If any child shall be deceased (including Raymond), leaving heirs of the body, such child or children shall take the parent's part per stirpes, and not per capita." And in paragraph 9 his words are: "In the event that any of my children shall be deceased and shall leave surviving children, heirs of the body, such surviving child or children, heirs of the body, (my grandchild or grandchildren) are to have and take their parent's part or interest, taking per stirpes and not per capita, but if deceased, without heirs of the body, that child's interest shall cease." The language admits of no interpretation other than grandchildren, whenever born, and who survive their parents within the ten-year period, shall take.
And even if the testator had been less specific and had merely stated that any grandchild or grandchildren should take the share of his deceased parent, the appellee's contention would be foreclosed by the express provisions of section 7036, Revised *Page 367 
Codes of Montana 1935, supra, and by the overwhelming weight of authority.
In the case of In re Murphy's Estate, supra [99 Mont. 114,43 P.2d 236], this Court said: "The law favors equality among children in the distribution of estates, and in case of a doubtful construction it selects that which leads to such result. * * * Reading the provision of the will as a general one intended for the benefit of all of testator's grandchildren by his son, it is a natural and reasonable one; excluding after-born grandchildren would be to render it unnatural and unreasonable and contrary to the natural meaning of the language employed. In re Van Wyck's Estate, 185 Cal. 49, 196 P. 50; In re Maltman's Estate, 195 Cal. 643, 234 P. 898." We hold the terms of the trust included as contingent beneficiaries the testator's grandchildren born after the creation of the limitation.
By the terms of the trust before us, it was to continue for[6] the full period of ten years, and if all the designated beneficiaries in being at the time of the creation of the limitation should die before the expiration of the ten-year period leaving a grandchild unborn at the time of the creation of the limitation, it was still to continue for the full period of ten years, during all of which time the absolute power of alienation of the trust property was suspended. Indeed, by the terms of the trust the absolute power of alienation was to be suspended for a term of ten years in any event. Clearly the duration of the period of suspension is not measured by lives in being, but by a term of years, and is therefore void under the provisions of sections 6705 and 6706, Revised Codes of Montana 1935, and by all of the adjudicated cases we have been able to find upon the subject.
The decision of the lower court distributing the property included in the intended trust is reversed, and said property ordered distributed under the laws of succession.
Mr. Chief Justice Lindquist and Associate Justices Morris, Adair, and Cheadle concur. *Page 368