[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 14 
Two appeals are presented by the records in the cases above entitled. No. 7778 is an appeal by Helen Beryl Whitney Wheeler from an order denying her petition for partial distribution of the estate of Joel Parker Whitney, deceased. No. 7834 is an appeal by Parker Whitney from an order denying his separate petition for a partial distribution of said estate.
The questions involved in the two appeals are substantially the same, and they may as well be considered together. The two appellants are children of the testator. Each claims a right to partial distribution before final settlement on the ground that the time for presenting claims has expired, that the estate is but little indebted, that a large part of the assets is in condition for distribution, and that said decedent, although he left a will which has been duly admitted to probate, made no valid or lawful disposition of his estate thereby. All these grounds are conceded, except the asserted invalidity of the will, and that is the only question presented for consideration.
Joel Parker Whitney died on January 17, 1913. He left surviving, as his only heirs at law, his widow, Lucy Whitney, and his three children, namely, Parker Whitney, Vincent Whitney, and Helen Beryl Whitney Wheeler. His estate consisted of the capital stock of the Whitney Estate Company, a California corporation, appraised at $847,821.15, and *Page 15 
two parcels of real property, one in Maine, worth two thousand dollars, and one in Colorado, worth seven thousand five hundred dollars. After the satisfaction of certain legacies and devises, the will gave the residue, which the court found to be of the value of $839,271.15, to three persons named, as trustees, in trust for the uses and purposes set forth in the will.
The general plan of this trust was that the widow should receive the sum of one thousand two hundred dollars per month during her life, in lieu of all other interests and rights she might have in the estate, including her rights in the community property, if any; that the said residue should be treated as a whole until his son Vincent became thirty-five years old, or until his death, if he died earlier; that during that period there should be paid to each child three hundred dollars per month, and that at the end of that period the residue should be "divided or distributed into three equal parts"; that one part should be transferred and conveyed to Vincent absolutely, if he lived to be thirty-five years old, if not, then to be held in trust for his issue, subject to a provision to be made for his widow, that the second one of the parts should be "held in trust for the benefit of Parker and his issue in the manner hereinafter provided," and that the third of said parts should be "held in trust for the benefit of Helen Beryl and her issue in the manner hereinafter provided."
The contention of the appellants is that the limitations of the will create future interests which suspend the absolute power of alienation for a longer period than during the continuance of lives in being at the death of the testator. Such suspension is forbidden by sections 715 and 749 of the Civil Code. It is also claimed that the will provides for unlawful accumulations of the income of the property, contrary to provisions of the Civil Code on that subject. (Sections 723 to 726.) The limitations attacked are those providing for the disposition of the property after the division of the residue into three parts as above mentioned.
The time of the death of the testator is deemed to be the time of the "creation of the limitation, condition, or future interest" declared to be void by the code sections above mentioned. (Civ. Code, sec. 749) Section 716 declares that "every future interest is void in its creation which, by any *Page 16 possibility," may suspend the power of alienation longer than the code permits. This possibility is to be determined by the conditions existing "at the time of the creation" of the limitation or future interests, — that is, at the time of the death of the testator. "The statute does not permit us to wait and see whether events may not so transpire that in fact no perpetuity results, but if under the terms of the deed or will creating the trust, when properly construed, the instrument 'by any possibility may suspend' the absolute power of alienation beyond the continuance of lives in being, the instrument, whether a deed or will, is void, and no trust is created nor any estate vested in the trustees." (Estate of Steele, 124 Cal. 537, [57 P. 564]; Gray on Perpetuities, sec. 231.)
The limitations in favor of the issue of Vincent, in case of his death before becoming thirty-five years of age, are similar, so far as the objections under consideration are concerned, to those for the issue of Parker and Helen. It is therefore unnecessary to state more fully the terms of those limitations. The questions may be as well determined by a consideration of the language of the will relating to the disposition of the shares of Parker and Helen.
With respect to the shares of Parker and Helen the first declaration of the will is that, upon the division or distribution into parts, "the second of these three parts shall be held in trust for the benefit of my son Parker and his issue, in the manner hereinafter provided, and the third of these three parts shall be held in trust for the benefit of my daughter Helen Beryl and her issue, in the manner hereinafter provided."
The special provision as to the share of Parker is:
"The third of the property set apart for the benefit of my son Parker and his issue . . . shall be held and disposed of as follows: . . .
"There shall be paid to my said son Parker the sum of thirty-six hundred dollars a year in equal monthly payments of three hundred dollars so long as he shall live. If at the time of his death his youngest child, if a son, shall have arrived at the age of twenty-one years, or, if a daughter, shall have arrived at the age of eighteen years, the third of the property heretofore held for his benefit shall be distributed equally among his children, the children of any deceased child taking by right of representation, the trustees retaining in *Page 17 
their hands during the life of my wife a sufficient amount of the property to pay four hundred dollars a month to my wife as one-third of the provision for her. In case his youngest child at the time of his death shall not have arrived at the age mentioned, above, the property shall be held in trust for the benefit of his children until the youngest child shall arrive at the age designated, and then the property shall be distributed among his issue as aforesaid. In case my son Parker shall die without leaving issue, the third of the property theretofore held for his benefit shall go in equal parts, one-half to my son Vincent, subject to the charge for the benefit of my wife, or to the trust for his issue, and the other half to the trust for the benefit of my daughter Helen Beryl and her issue."
As to Helen's share it is:
"The third of the property set apart for the benefit of Helen Beryl and her issue . . . shall be held and disposed of as follows:
"There shall be paid to my daughter Helen Beryl the sum of thirty-six hundred dollars a year in equal monthly payments of three hundred dollars, and the trustees acting unanimously at any time shall have the power to increase the income paid to my said daughter to the full amount of the net income derived from the property held for her benefit, after deducting the amount required to provide one-third of the amount required for the monthly payments to my wife.
"Upon the death of my daughter Helen Beryl, so much of the income as the trustees shall consider appropriate and necessary shall be paid to her issue until her youngest child, if a son, shall have arrived at the age of twenty-one years, or, if a daughter, shall have arrived at the age of eighteen years, when the third of the property theretofore held for the benefit of my daughter Helen Beryl shall be distributed equally among her children, the children of any deceased child taking the parent's share by right of representation, the trustees retaining in their hands during the life of my wife a sufficient amount of the property to pay four hundred dollars a month to my wife as one-third of the provision for her.
"In case my daughter Helen Beryl shall die without leaving issue, the share of the property which would have been or shall have been held for her benefit shall be divided equally *Page 18 
one-half to my son Vincent, subject to the charge for the benefit of my wife, or to the trust for the benefit of his issue, and the other half to the trust for the benefit of my son Parker and his issue."
If the effect of these provisions, in the possible event that a child shall die leaving a minor child or children, is that the title to the share is to be held by the trustees thereafter until the youngest child is of age and shall at that time, and not before, become vested in those of the issue that may then be living and the children, if any, of any deceased child, then it would constitute a gift to a class of persons, not in being at the death of the testator, and neither the number of the class nor the persons who are to compose the class could be known or ascertained until the youngest surviving child became of age. (See Civ. Code, sec. 1337) Such remainder would be a future contingent interest which could not be aliened until the child became of age. (Civ. Code, secs. 693, 695.) Then, for the first time, the persons who are to own it would become known. That event must occur after the termination of the life of the child of the testator. From the death of such child, until the youngest of such issue became of age the power of alienation would be suspended, contrary to section 715, aforesaid. (Estate of Cavarly, 119 Cal. 409, [51 P. 629].) Under section 716, such limitation would be void in its creation.
If these dispositions of the remainder in the shares of Helen and Parker are void for the reasons stated, the result is that the decedent made no testamentary disposition of that portion of his estate, that he died intestate as to that part of his property, and the same descended at his death to his heirs at law according to our law of succession. The share set apart for Helen and her issue would not, in that event, go entirely to her issue, as the testator intended, upon the arrival of her youngest child at majority, nor even to her heirs exclusively at her death. It would go to the heirs of the testator and would vest in them at his death and not at the death of Helen. If it was his community property, his widow would take one-half and the three children would each take one-sixth of this remainder in the one-third part directed to be set apart to Helen. If it was his separate property, the widow would take one-third and each child two-ninths. The court did not *Page 19 
find on the issue whether it was community property or separate property.
Nothing can be clearer than the proposition that the testator did not intend that his widow, or either of the other children, should have any part of the share so set apart to one child, except in the contingency he provided for, that is, the death of one of his children without issue. To do this would destroy a very material part of the plan of the testator for the disposition of his estate, and would produce a result which he did not contemplate and to which it cannot be supposed that he did consent or would have consented.
Where a will or deed disposes of property upon trusts for several purposes, some of which are valid and some void, the "valid trusts should not be disregarded because in the instrument creating them one particular invalid trust is declared, unless the latter is so inseparably blended with the others that it cannot be eliminated without destroying the main intent of the trustor or working manifest injustice to other beneficiaries." (Estate of Willey, 128 Cal. 11, [60 P. 471].) If the elimination of the void trust causes no important practical change in the testator's general scheme, if such void trust is not essential thereto, and does not impair the validity of the other dispositions of the will, it may be cut off and the other dispositions allowed to stand. (Manice v.Manice, 43 N.Y. 381.) If the trust created "is of such a nature as to make it indivisible, and incapable of being carried out as to that trust which is clearly legal, because of the invalidity of the other trust," the whole trust must be held void. (Nellis v. Rickard, 133 Cal. 620, [85 Am. St. Rep. 227,66 P. 32].) "The question whether the valid clauses can stand depends upon whether or not the invalid ones are so interwoven with them that they cannot be eliminated without interfering with and changing the main scheme of the testator. InDarling v. Rogers, 22 Wend. (N.Y.) 495, Senator Verplanck correctly stated the rule as follows: 'When a will is good in part and bad in part, the part otherwise valid is void if it works such a distribution of the estate as, from the whole testament taken together, was evidently never the design of the testator. Otherwise, when a good part is so far independent that it would have stood had the testator been aware of the invalidity of the rest.' " (Estate of Fair, 132 Cal. 540, [84 Am. St. Rep. 70, 60 P. 442, 64 P. 1000].) *Page 20 
The conclusion necessarily follows that if these remainders over after death of the testator's children are not remainders vesting at their deaths, respectively, but only when the youngest surviving child shall become of age, they are void, that the trust for that purpose is incapable of being separated from the trusts otherwise valid, and that the entire disposition in trust must be declared void. It is therefore necessary to determine whether, by the terms of the will, these remainders are to vest at the death of the respective children, or afterward, upon the coming of age of the youngest child.
The intention of a testator must be determined by the language of his will. Where there is doubt as to its meaning, that interpretation is to be preferred which will avoid intestacy as to the whole or any part of the estate. (Le Breton
v. Cook, 107 Cal. 416, [40 P. 552]; Civ. Code, sec. 1326) A construction which leads to the conclusion that a remainder is vested is to be taken rather than one which would make such remainder contingent. (Williams v. Williams, 73 Cal. 102, [14 P. 394].)
Giving due weight to these rules and policies, we are nevertheless unable to reach the conclusion that the will provides that the interests of the children of Parker, if one is a minor, shall vest on the death of the parent. On the contrary, the only reasonable interpretation of its language is that the title to such remainder is to remain in the trustees until his youngest child becomes of age and is at that time to be distributed by the trustees, and is then to vest in his children then living and the children then living of any deceased child, and that the same meaning must be given to the provisions as to the like remainder in the Helen one-third.
The will declares at the outset that the residue is given, devised, and bequeathed "to the trustees, in trust, for the uses and purposes hereinafter mentioned." The title to the whole residue is thereby vested in the trustees. Of necessity it must remain in them so long as the duties of the trust require them to deal with the title, or to dispose of the property. The "estate" so vested in them passes out of them, or "ceases," only when the purposes for which the trust was created, as to any particular share, are accomplished, or have "ceased," as the code expresses it. (Civ. Code, sec. 871) The effect of the first provision, above quoted, regarding these two parts, or shares, as to the Parker share, for example, is not that the *Page 21 
title to the remainder shall at his death go to, or vest in, his issue, but that such title shall remain in the trustees, to be by them "held in trust for the benefit of my son Parker and his issue in the manner hereinafter provided." The provision as to the Helen share is the same.
Looking into the "manner hereinafter provided," we find that the provision for the disposition upon the death of Parker leaving a minor child surviving contains no word or phrase purporting to transmit the title or estate at that time from the trustees to his issue or children, or which purports to make any change at that point of time in the title. The trust does not then cease. On the contrary, the provision is that "the property shall be held in trust (that is, by the trustees in whom the title still remains), for the benefit of his children" thereafter, until the youngest child becomes of age. The opening phrase regarding the disposition by the trustees of this share, the words: "The third of the property set apart for the benefit of my son Parker and his issue," does not aid the respondent on this point. That is not a declaration that the property is set apart to Parker or to his issue, but that it is or has been set apart "for the benefit of " Parker and his issue, and it implies that the property is to be held by the trustees and disposed of by them as directed, that is, when the youngest minor child becomes of age after Parker's death. There is no direction that any title to or estate in that share shall pass out of the trustees in any manner until the event last mentioned occurs. The only words providing for the transmission of title to this future interest by or from the trustees are those directing that when the youngest child becomes of age, "then the property shall be distributed among his issue as aforesaid," that is, equally, the children of any deceased child "taking by right of representation." This clause defines the manner in which this remainder held in trust is to be disposed of by the trustees and it is the only clause that does define it. The trust would then terminate because no further duties or powers are left for the trustees to perform regarding that share. The use of the word "taking" in the phrase "the children of any deceased child taking by right of representation," implies that the ultimate beneficiaries are to take the property, that is, that they are to receive the title thereto. And since it could not be determined until that time who would be the persons entitled to take, or the proportion *Page 22 
going to each, the necessary implication is that the persons who are to take are the children and grandchildren, as the case may be, then surviving, and that the heirs, as such, of any who had in the meantime died would not take any interest. The widow of a deceased child would be an heir, but would not take. Under these circumstances the provision that the property shall then be distributed to the designated class should be construed to mean that the property previously held by the trustees shall then vest in and be delivered to the persons composing the class.
While the provisions as to Helen's share are not couched in precisely the same words, there is no substantial difference in meaning and the same conclusions follow. The same result would be declared as to Vincent's part in the event, possible at the time of the creation of the trust, that he should die under the age of thirty-five years.
It is to be further noted that the effect of the provisions concerning the income of the property after the death of the testator is to provide for an accumulation of all the income in excess of two thousand one hundred dollars a month and such additional allowance as the trustees may give to Helen, if there should be such excess. The three children were adults at the death of the testator. These provisions are void, so far as they provide for such accumulations during the lives of the three children, because they are contrary to sections 722 to 726, inclusive, of the Civil Code, forbidding accumulations of income except for the benefit of minors in being and during their minority.
The result is that the dispositions of these remainders are void, that the testator died intestate as to that portion of his estate, and that as this trust cannot be separated from the others without changing the dispositions intended by the testator and practically making a new will, the entire trust provision is void. The trustees took no title to or interest in the property.
In Estate of Yates, 170 Cal. 254, [149 P. 555], cited by respondents, there were words denoting a clear intent to vest the title to the bequests in the beneficiaries at the death of the testator, the time of delivery only being postponed. The case is not in point here. The law is thus stated in Estate ofBlake, 157 Cal. 459, [108 P. 287]: "The general rule is that where the legacy or devise is given to a person to be paid at *Page 23 
a future time, it vests immediately. When, however, it is not given until a future time, it is contingent and does not vest until that time occurs." The decision in Estate of Winter,114 Cal. 186, [45 P. 1063], is to the same effect and the language of the will there construed is substantially the same as that of the limitation here involved.
A further statement is necessary in regard to the rights of the widow of the testator. The will declared that it was the intention of the testator thereby to dispose of all of his property, including any community property in California, "with the written consent and acceptance" of his wife. It directs the trustees, out of the residue given to them in trust, to pay to his wife one thousand two hundred dollars a month from the time of his death until her death, and makes certain specific bequests to her which are not embraced in the residue. Attached to the will was an instrument, executed by the wife on the day of the execution of the will, whereby she declared that she had read the will and that, "clearly understanding that my said husband by his said will, disposes not only of all his individual property, but also all of our community property, in case there is any such, including my half as well as his own, I hereby elect to accept and acquiesce in the provisions of the said will, and hereby waive all claims to my share of any community property, and any and all other claims that I may have upon any of the estate disposed of by the said will, being fully convinced in my own mind of the reasonable and proper character of the said will, and the wisdom of its provisions, and hereby accepting such of the said provisions as apply to or concern me." (See Estate of Whitney, 171 Cal. 753, [154 P. 855].)
We are satisfied that this instrument, under the circumstances of this case, does not waive the widow's rights to claim a share, under the law of succession, in any property of the decedent of which the will makes no valid disposition. By its terms she waived only such claims as she had upon property disposed of by the will. Her annuity was to be paid by the trustees out of the residue given to them to be held in trust. It was in consideration of this annuity, the payment of which was made a paramount charge upon the trust property, that she elected to waive all claims to the other avails of the residue and in the corpus thereof. Now that the trust disposition of the residue must be declared void, the trustees will have no *Page 24 
property and she can receive nothing from them. Justice requires that she be relieved of her election and restored to her legal rights as widow and heir in the residue. The sums already paid to her on the annuity will be chargeable against her as advances upon her share.
The will stands as to the special legacies, amounting to something over sixteen thousand dollars. The disposition of the residue to trustees being void, such residue must be distributed according to the law of succession and, upon the facts found and admitted, both Parker and Helen were entitled to partial distribution.
The respective orders denying partial distribution are reversed.
Sloss, J., and Lawlor, J., concurred.
Hearing in Bank denied.