[L. A. No. 11987. In Bank.—September 29, 1931.]

In the Matter of the Estate of JOHN JAMES TROY, Deceased. DAVID H. HOWIE et al., Executors, etc., Appellants, v. HELEN TROY et al., Respondents.

Lawler & Degnan and Seiler & Seiler for Appellants.

Farrand & Slosson for Respondents.

SHENK, J.—Appeal by David H. Howie, V. H. Rossetti and Helen Troy, as executors of the will of John James Troy, deceased, by David H. Howie and V. H. Rossetti, as trustees named in said will, and by the Trustees of Dartmouth College, from that portion of the decree of distribution which provides for the distribution of the residue of the decedent's estate to Helen Troy, the decedent's widow, and James Storrow Troy, his minor son, as heirs at law, in accordance with the intestacy laws of this state.

The decedent was a resident of Los Angeles County and died testate in Boston, Massachusetts, on October 17, 1927. On November 6, 1924, he executed a last will and testament by which, after making certain specific legacies, he attempted to create a trust in the following manner:

"Third: All the rest, residue and remainder of the property of every nature and description which may belong to me at my death I give, devise and bequeath to the trustees hereinafter named, in trust, to have and to hold to them and their successors in trust for the following purposes:

"(a) If my wife survive me, to pay to her, at least as often as semiannually, the entire net income of the trust fund during her lifetime.

"(b) On the death of my wife, or upon my death if my said wife shall not survive me, if there are children of mine then living or then deceased leaving issue then living,

to divide the trust property into as many equal shares as there are children of mine then living and then deceased leaving issue then living, the issue of any deceased child of mine to stand in the place of such deceased child by right of representation.

"(c) If at that time any child of mine shall have reached the age of 21, to pay over to such child one of such shares free from all trusts. If at that time all of the issue of a child of mine then deceased shall have reached the age of 21, to pay over to such issue in equal shares one of such shares.

"(d) To retain the shares not so distributed in trust, and to expend all or so much of the net income of each of such shares as the trustees in their uncontrolled discretion shall deem best for the comfortable maintenance, support and education of each of such children or the issue of any child of mine then deceased until such child or all of the issue of any child of mine then deceased shall reach the age of 21. When and as any child of mine shall reach the age of 21, and when and as all of the issue of any child of mine then deceased leaving issue shall have reached the age of 21, to pay over to such child or the issue of any child of mine then deceased leaving issue one of such shares free from all trusts.

"(e) If any child of mine surviving both my wife and me shall die before reaching the age of 21 leaving issue, the issue of such child shall take the share such child would have taken if such child had reached the age of 21. If any child of mine surviving both my wife and me shall die before reaching the age of 21 leaving no issue then surviving, the share such child would have taken if he had reached the age of 21 shall be distributed in equal shares among the children of mine then living or then deceased leaving issue, such issue to take in equal shares by right of representation.

"(f) Upon the death of my wife or upon my death, if my wife shall not survive me, if there are no children of mine then living or then deceased leaving issue then living, to pay over to David H. Howie, of Cambridge, Massachusetts, if he be the living, two-thirds of the trust property then held by them free from all trusts, and to pay over to the Trustees of Dartmouth College located at Hanover, New Hampshire, the remaining one-third of the trust property, or

if said David H. Howie be not then living, all of the trust property then held by them free from all trusts, to be held by said Trustees of Dartmouth College as a separate fund to be known as the 'John J. Troy Fund'. . . . ''

The decedent left as his only heirs at law, his widow, Helen Troy, and one son, James Storrow Troy, a minor. The testator appointed his wife, Helen Troy, David H. Howie and V. H. Rossetti, as executors of his will, and the two last named as trustees thereunder. Upon the filing of the executors' petition for an order settling their final account and for distribution in accordance with the terms of the will, Helen Troy individually and as guardian of the estate of the minor son filed exceptions to the account and to the distribution of the estate as prayed, and sought distribution to herself and the minor son as heirs at law of the decedent on the ground that said attempted trust was in violation of the provisions of sections 715 and 716 of the Civil Code. The court sustained the exceptions and decreed distribution accordingly.

The questions to be determined on this appeal are (1) Do the provisions of the will hereinabove quoted violate the provisions of sections 715 and 716 of the Civil Code; and (2) If some only of those provisions be void, may the valid provisions of the will be separated from the void provisions and be given effect?

It may be taken as settled by the decisions in this state that the beneficiary of a trust takes no estate in the property itself and that title vests in the trustee with the right in the beneficiary to enforce performance of the trust; and, therefore, that subdivision (d) of paragraph third of the decedent's will provides for a contingency which, if it occur, will suspend the power of alienation for a period beyond the continuance of lives in being at the time of the testator's death. The creation of a trust of property for the minorities of grandchildren born after the testator's death, under said subdivision (d) therefore, since title vests in the trustee, may suspend the power of alienation for the period of lives not in being at the decedent's death. (*Estate of Walkerly*, 108 Cal. 627 [49 Am. St. Rep. 97, 41 Pac. 772]; *Estate of Cavarly*, 119 Cal. 406 [51 Pac. 629]; *In re Steele's Estate*, 124 Cal. 533 [57 Pac. 564]; *Estate of Whitney*, 176 Cal. 12 [167 Pac. 399]; *Estate of Van Wyck*, 185

Cal. 49 [196 Pac. 50]; *Estate of Maltman,* 195 Cal. 643 [234 Pac. 898].)

The respondents urge that the provisions of subdivision (e) violate the same sections of the Civil Code. It is argued, and we think the plain and proper construction of this subdivision, reading it in conjunction with subdivisions (c) and (d) of the will, is that the testator intended that his grandchildren should be divided into two classes, and only the shares of those who were in existence at the time and with the status as designated in subdivision (d) should be included in the trust provisions.

The first contention made by the appellants is that, inasmuch as the testator left surviving him his widow and but one son, the contingency upon the happening of which hinges the prohibited suspension of the power of alienation, viz., the death of the son prior to that of the widow leaving issue all of whom shall not have attained the age of twenty-one years at the widow's death, may never happen. In connection with this argument the appellants refer to section 1317 of the Civil Code (now section 101 of the Probate Code), providing that where the intention of a testator cannot have effect to its full extent, it must be given effect as far as possible. It has frequently been stated that the provisions of section 716 of the Civil Code do not permit us to wait and see what happens in order to determine the validity or invalidity of the limitation. It is the possibility of the event that will suspend unlawfully the power of alienation which serves to void the limitation at the time of its creation. The recognition of this mandate of our code is expressed thus in *In re Steele's Estate, supra,* at page 537: "The statute does not permit us to wait and see whether events may not so transpire that in fact no perpetuity results; but if, under the terms of the deed or will creating the trust, when properly construed, the instrument 'by any possibility, may suspend' the absolute power of alienation beyond the continuance of lives in being, the instrument, whether a deed or will, is void, and no trust is created nor any estate vested in the trustee. . . . It must be apparent that appellants' present rights depend upon the present validity or invalidity of the will and not upon future contingencies which are not within the prohibition of the stat-

ute.'' (See, also, *Estate of Whitney, supra; Estate of Malt-man, supra.*)

In *Estate of Whitney, supra,* the effect of the limitation created by the will is claimed to be so similar to the effect of the trust provisions in the present case that the statement of the court in that case appearing at page 18 may be adopted here, viz.: ''If the effect of these provisions, in the possible event that a child shall die leaving a minor child or children, is that the title to the share is to be held by the trustees thereafter until the youngest child is of age and shall at that time, and not before, become vested in those of the issue that may then be living and the children, if any, of any deceased child, then it would constitute a gift to a class of persons, not in being at the death of the testator, and neither the number of the class nor the persons who are to compose the class could be known or ascertained until the youngest surviving child became of age. Such remainder would be a future contingent interest which could not be aliened until the child became of age. . . . Then, for the first time, the persons who are to own it would become known. That event must occur after the termination of the life of the child [here the widow] of the testator. From the death of such child [here the widow] until the youngest of such issue became of age the power of alienation would be suspended, contrary to section 715, aforesaid. (*Estate of Cavarly,* 119 Cal. 409 [51 Pac. 629].) Under section 716, such limitation would be void in its creation.''

The provisions of section 716 of the Civil Code and the holdings in the above cited cases, indicate clearly that section 1317 of the Civil Code (sec. 101, Prob. Code), invoked by the appellants, has no application when the limitation created by any possibility may operate to suspend the power of alienation beyond the period allowed by said section 715. (See *Estate of Van Wyck,* 185 Cal. 49, 61 [196 Pac. 50].) But the question is, what is the limitation? In *Estate of Van Wyck, supra,* the provision for the continuation of the trust during the period of the lives of the children and grandchildren, was held to be but one limitation and since the estate there created might vest at some future time which would be subsequent to the death of persons in being at the time of the creation of the limitation, the limitation necessarily was declared void at its creation.

■ The answer to the question must depend upon whether a provision for the continuation of the trust for the minority of the son may be separated from a provision for the trust in favor of grandchildren. The provisions of section 1317 of the Civil Code also compel a consideration of the question whether the valid trust for the life of the widow, the valid contingent remainders provided in subdivisions (c) and (e), and the valid contingent remainder to David H. Howie and the trustees of Dartmouth College, may stand in spite of the invalidity of the provision for the continuation of the trust during the minorities of after-born descendants. The question manifestly is one of separability.

■ May the invalid provisions be cut from the will and the balance stand as the will of the testator, or will such an operation have the effect of making a provision for the testator which is contrary to his intent or which will destroy his general plan or scheme? The answer must be obtained from a consideration of the terms and provisions of the will itself. That trust provisions for a valid term may be separated from those providing a trust for an invalid period was decided in *Nellis* v. *Rickard,* 133 Cal. 617 [85 Am. St. Rep. 227, 66 Pac. 32]. Where there is established more that one trust and it is clear that they are established for separate and independent purposes, no difficulty arises, as in the case where a testator has provided for a valid trust of a portion of his estate in favor of a sister, together with an invalid trust of the residue in favor of his descendants. In such a case, the trust for the sister, being for an independent object and purpose, will be enforced. Such a situation is illustrated by the provisions of the will in *Estate of Van Wyck,* 185 Cal. 49 [196 Pac. 50, 57], where as to a trust for the sister of the testator it was said, at pages 63, 64: "The provision for her benefit is not a part of the testator's general scheme for the disposition of his estate, and is very evidently a provision the making of which would not have been affected had the testator known of the illegality of the provision he was making for his children and their descendants." Such a result depends upon the clarity with which the testator has shown by the provisions of his will an intent that the valid trust would nevertheless have been his will had he known of the invalidity of the other trust or trusts, or upon the fact that the cutting off only of

the invalid provisions will but incidentally affect his scheme or plan which otherwise should be enforced in accord with his intent.

The difficulty is in the application of the principles involved to the facts of each particular case. In *Estate of Pichoir,* 139 Cal. 682, 685 [73 Pac. 606, 607], it was said: "There is little difference of opinion as to the general rules which obtain in determining the questions here involved. They are that 'where there are valid and invalid clauses in a will, the question whether the valid clauses can stand depends upon whether or not the invalid ones are so interwoven with them that they cannot be eliminated without interfering with and changing the main scheme of the testator'. (*Estate of Fair,* 136 Cal. 79 [68 Pac. 306].)" "It is an application of the rule stated in section 1317 of the Civil Code that where the intention of the testator cannot have effect to its full extent, it must have effect as far as possible." (*Estate of Phelps,* 182 Cal. 752, 763 [190 Pac. 17, 21].) In *Estate of Pichoir, supra,* trusts as to real and personal property were held separable as not in violation of the intent of the testator, but in accord therewith. In *Estate of Phelps, supra,* it was concluded that an invalid trust providing for annuities to the brothers and sisters temporarily until the accumulation of the fund involved was separable as being but a minor part of the main scheme, and not essential to the main plan, nor so interwoven with it that the two must stand or fall together. In *Estate of Whitney,* 176 Cal. 2, at page 19 [167 Pac. 399, 402], the principles are stated thus: "Where a will or deed disposes of property upon trusts for several purposes, some of which are valid and some void, the 'valid trusts should not be disregarded because in the instrument creating them one particular invalid trust is declared, unless the latter is so inseparably blended with the others that it cannot be eliminated without destroying the main intent of the trustor or working manifest injustice to other beneficiaries.' (*Estate of Willey,* 128 Cal. 11 [60 Pac. 471].) If the elimination of the void trust causes no important practical change in the testator's general scheme, if such void trust is not essential thereto, and does not impair the validity of the other dispositions of the will, it may be cut off and the other dispositions allowed to stand. (*Manice* v. *Manice,* 43 N. Y. 381.) If the trust

created 'is of such a nature as to make it indivisible, and incapable of being carried out as to that trust which is clearly legal, because of the invalidity of the other trust', the whole trust must be held void. (*Nellis* v. *Rickard,* 133 Cal. 620 [85 Am. St. Rep. 227, 66 Pac. 32].)'' In that case a provision for the payment from income of a certain sum per month to the widow during her lifetime was held to be inseparable from invalid provisions for the testator's children, and was also void.

In *Estate of Van Wyck, supra,* at page 62, it was said: ''The real question presented where a will contains both valid and invalid provisions is whether the two are so parts of a single plan or scheme or otherwise so dependent one upon the other that by avoiding the invalid provisions and allowing the valid to stand there will result a disposition of the estate so different from what the testator contemplated or so unreasonable that it must be presumed that the testator would not have made the valid provisions if he had been aware of the invalidity of the others.'' There a valid trust for the lives of the son and daughter was held inseparable from an invalid continuation of the trust for the reason that the son and daughter otherwise would be in the anomalous situation wherein the same people own both the beneficial life estate in the property and the remainder over in fee after the termination of the life estate, but with the life estate and the remainder in fee kept from merging by the interposition of a trust. The court's consideration of the will in that case led it to state: ''There can be no presumption that if the testator had known of the invalidity of the portion of the trust which offends the statute, he would yet have wished the trust to stand for the lives of his son and daughter, futile and unreasonable as long as it should stand, and upon its termination resulting in the property very possibly going to others than those to whom he desired it should go. The presumption is quite the contrary. In other words, it appears that the valid and invalid portions of the trust which the testator attempted to create are so intimately connected and so dependent one upon the other that the invalid portions cannot be taken away without the whole scheme and plan of the testator falling. The trust must therefore be declared invalid *in toto.* This conclusion is supported by the authority of *Estate of Whitney,* 176 Cal. 12 [167 Pac.

399], where a trust identical in all material respects with that under consideration was involved and was held both to offend the statute as to the suspension of the power of alienation and to be void *in toto,* for reasons which we have in effect but repeated here.''

The question of separability is commented upon in *Tilden* v. *Green,* 130 N. Y. 29 [27 Am. St. Rep. 487, 14 L. R. A. 33, 28 N. E. 880, 883], as follows: ''This rule is of frequent application in the construction of wills, but it can be applied only in aid and assistance of the manifest intent of the testator, and never where it would lead to a result contrary to the purpose of the will, or work injustice among the beneficiaries, or defeat the testator's scheme for the disposal of his property.''

In *Estate of Maltman, supra,* a division of the trusts in favor of the son and daughter, the trust in favor of the latter being otherwise valid, was held contrary to the testator's intent for the reason that his plan or scheme did not contemplate the receipt by the daughter of three-fourths of the estate, one-half as beneficiary and one-quarter as heir at law, and by the son of only one-fourth thereof.

In the present case we are confronted with the question whether the valid trust for the life of the widow, a valid trust for the minority of the son should the widow die during his minority, and the valid contingent remainders provided for in subdivisions (c), (e) and (f) of paragraph third of the will, may be held separable from the void provisions of subdivision (d). That is, whether the limitation for the continuation of the trust during the minorities of children who may be born to James Storrow Troy and who shall survive first their father and then the decedent's widow, which is conceded to be void, may be cut from the testamentary document and the balance allowed to remain as the will of the testator. Will such an operation serve but to cut off only an incidental or insubstantial portion of the testator's express scheme and purpose, and, without working an injustice among the beneficiaries, have the effect of preserving rather than defeating his main scheme or plan for the disposition of his property? The contestants take the position that the whole will must fall. But ''If we can read into a will an intention to preserve any part of it, even with the illegal portions stricken out, the court will do so.

In such a case we try to determine whether the maker of the will would have created the trust if all his express purposes could not be accomplished. This is not strictly law; it is a matter of good judgment, the judgment of men who according to our judicial system must in the last analysis determine the question. In declaring a testator's intention, however, the courts are limited to the words which the testator, himself, has used in his will." (*Matter of Durand,* 250 N. Y. 45, 53, 54 [164 N. E. 737, 740].) In that matter, though the continuation of the trust beyond the life of the widow was held illegal, the trust for the life of the widow with the remainder over to the son if he survive was held not to be disturbed, the court saying at page 56: "If the son survives his mother, the life beneficiary, he takes the remainder under the eleventh clause of the will; if he dies before his mother, the testator has failed to make any provision for such an event. In that case, there is an intestacy and his property will vest and is vested in his next of kin." In *Nellis* v. *Rickard, supra,* a valid life estate for the widow was held not to be affected by an illegal limitation for the continuation of the trust thereafter. That result could not obtain in *In re Steele's Estate, supra,* for the reason that the trusts for the widow and children ran concurrently, a certain proportion of the income to be paid to each. In *Matter of Wilcox,* 194 N. Y. 288 [87 N. E. 497, 498], the life estate was held to be severable, but the remainder over was held to fall with the invalidity of the limitation for the continuation of the trust during the minorities of the children of the life tenant. There, however, the remainder over was made to depend upon the death of the daughter, the life tenant, "leaving no issue born to her, which shall attain the age of 21 years", the court intimating that if the contingency had been that the life tenant die without issue surviving, the gift over unquestionably would have been good.

In *Matter of Trevor,* 239 N. Y. 6 [145 N. E. 66, 69], following the stated principle that "if a way may be found to preserve what is essential and legal, that which is illegal and of minor consequence must not be permitted to defeat the clear purpose of the testator", the court held that the trust for the benefit of children and their issue may be treated as one entirety, and the contingent trust for the benefit of surviving children in the case of the death of a

child without issue should be treated as a separate entirety, with the result that the share of such child vested immediately on its death, the contingent trust being but a secondary, separable and alternative purpose of the testator and unessential to his dominant purpose that ownership shall vest in the children who shall live to become entitled to their shares. This conclusion was reached under the New York statute which provides that every future estate shall be void in its creation which shall suspend the absolute power of alienation by any limitation or condition whatever, for a longer period than during the continuance of not more than two lives in being at the creation of the estate. A similar result, based on the principles expounded in *Matter of Trevor*, was reached in *Oliver* v. *Wells*, 254 N. Y. 451 [173 N. E. 676].

No case has been cited wherein a valid trust of the whole residue for the life of the widow, or other beneficiary, has been held not to be severable even though there has been limited thereon an invalid continuation of the trust. In the present case, if the son predecease the widow leaving no issue which shall survive the widow, the remainder over provided in subdivision (f) of paragraph third of the will is valid and enforceable. In construing the will in *Matter of Trevor, supra,* the court stated: "The will is to be read in the light of what has happened, not so much for the purpose of determining its validity as for the purpose of seeing clearly by such light what is possible in the way of separating the good from the bad." There the question was decided in the light of the facts as they existed at the termination of the first life. No authority or statute has been presented which prohibits a consideration of the questions here presented in the light of conditions as they exist at the time of the creation of the limitation, viz., at the time of the decedent's death. In fact, the application of the statute and of the principles herein stated to existing facts is the burden of all of the cited cases.

Here, then, the testator having left surviving him but one son, it would seem to be rather consonant with good judgment than otherwise, in accord with the principles stated and, without offending the statute, in accord with the mandate of section 1317 of the Civil Code, and without changing any of the major provisions of the testator's disposition of

his property, to consider the trust for the minority of the son, should he survive the widow, as one entirety or limitation, and the trust for minor children of the son should he predecease the widow and they survive her, as a separate entirety or limitation. This result could not obtain under the facts in *Estate of Van Wyck, supra,* nor in *Estate of Whitney, supra,* because there the testator left several children surviving, and it would be contrary to his main scheme to provide for a vested title in grandchildren while at the same time postponing enjoyment of possession in his children. But so to consider the parts here will result in intestacy only in the event that the son predecease the widow leaving a child or children who shall survive the widow and still be minors at the widow's decease. The contestants do not question that alternative contingent limitations may be created.

We conclude that the only invalid limitation, therefore, under the facts which exist here, is the limitation to minor children of the testator's son should they survive first their father and then the widow during the minority of any one of them, and that such limitation is not so inseparably blended with the valid provisions that it may not be cut off and the balance permitted to stand. We think it is clear that, in view of the invalidity of a continuation of the trust beyond the minority of the son, should he survive the widow, that is, upon the happening of the contingency that the son predecease the widow and leave minor issue which shall survive the widow, the testator has made no provision, and as to that contingency he died intestate. The same result would obtain, by virtue of the fact that no provision is made therefor, in the event that the son survive the widow but die before arriving at the age of twenty-one years leaving no issue. To hold otherwise with respect to the invalid and valid provisions of the will would be to defeat, rather than give effect to, the will of the testator and the dominant intent and plan expressed therein. Our conclusion does not result in a disposition of the estate so different from what the testator contemplated nor so unreasonable that it must be presumed that the testator would not have made the valid provisions had he been aware of the invalidity of the others; it does not work injustice among the beneficiaries, nor defeat the dominant scheme and purpose of the testator in the disposi-

tion of his property; nor does it cause any important practical change in the testator's general scheme or result in any possibility that the property will go to others than those he intended; but, on the contrary, those whom the testator intended should benefit and whom he cherished will take by the plan which he devised.

The decree of the probate court is reversed with directions to enter its decree that the residue be distributed to the trustees named in the will for the following purposes: To pay the income to Helen Troy, the widow, during her lifetime, in accordance with subdivision (a) of paragraph third of the decedent's will; on the death of the widow survived by the son, James Storrow Troy, if he be a minor at that time, the trust to continue until he arrive at the age of twenty-one years, and then to distribute the trust estate to him; if the son survive the widow and at that time shall have arrived at the age of twenty-one years, to distribute the trust estate to the son; if the son survive the widow but die before reaching the age of twenty-one years, upon his death to distribute the trust estate to his children, if any survive him, in accordance with subdivision (e) of paragraph third of the decedent's will, and if no children survive him, then to the decedent's heirs at law in accordance with the intestacy laws of this state; if the son predecease the widow, leaving issue who shall survive the widow, upon the latter's death to distribute the trust estate to such issue if all thereof have attained the age of twenty-one years, in accordance with the provisions of subdivision (c) of paragraph third of the will, otherwise to the decedent's heirs at law in accordance with the intestacy laws of this state; and if the son predecease the widow leaving no issue which shall survive the widow, upon the latter's death to distribute the trust estate in accordance with the provisions of subdivision (f) of paragraph third of the will.

Langdon, J., Preston, J., Curtis, J., Seawell, J., Waste, C. J., and Richards, J., concurred.