[S. F. No. 15469.   In Bank.—May 1, 1936.]

WILLIAM A. SHEEAN, Appellant, v. EMILE MICHEL et al., Respondents.

P. A. Bergerot and A. P. Dessouslavy for Appellant.

William E. Harvent for Respondents.

SHENK, J.—The plaintiff became the purchaser at an execution sale of certain lots situated in Alameda County. He brought the present action to quiet his title thereto against the claims of the defendants. The court ordered judgment for the defendants, from which judgment the plaintiff appealed.

The claims of the defendants were based upon a declaration of trust executed by the defendant, Emile Michel, purporting to convey extensive real property, including the lots here involved, to himself in trust. The instrument was recorded in Alameda County on January 26, 1932. A judgment for the sum of approximately $25,000 was recovered in November of the same year against said defendant Emile Michel, pursuant to which the execution sale to the plaintiff took place. The validity of the provisions of the trust instrument was called into question by the plaintiff's action and the defendants' answer and cross-complaint. The plaintiff contends that the pertinent provisions of the trust create a suspension of the power of alienation in violation of section 715 and related sections of the Civil Code. If this contention has sufficient

merit, the judgment must be reversed, and it will not become necessary to consider other facts involved or points presented.

In the instrument in question the trust purposes and objects are specifically declared to be the "use, benefit and enjoyment, and behoof of my wife, Marie P. Michel, and my children born and to be born of the marriage of myself and Marie P. Michel, my wife, the children now living being named as follows", naming six children, the eldest of whom was in his twelfth year at the time the instrument was executed. Although Marie P. Michel was declared to be a beneficiary of the trust, no specific provision for her benefit was included. Emile Michel, as the trustee, was empowered to hold and manage the property conveyed by the instrument, and any property subsequently added by him, and to sell any of it without notice or court order or approval, and without bond or appraisement, or to mortgage or lease any of it, and to invest the proceeds in such property or securities as he should deem best. The trustor declared that he should not be held for any loss by reason of accident, or mistake, or error in judgment exercised by him in good faith as trustee. The seventh clause provided that the trustee should receive so much of the income as should accrue during the "minority of my children", and apply the whole or any part to the board, lodging, education or maintenance in any manner he should deem best without accountability for his judgment in such application. By the eighth clause the trustee was given power to permit "any one of my said children to draw from said trust fund any amount I shall think to be best up to the amount of such child's undivided share in such fund, but no more"; and that in case of the "death of one or more of my said children", the issue of such deceased child or children shall receive the parent's share by right of representation. By the ninth clause the trustor provided that in the event of the death of "any of my said children" without issue, such child's portion of the fund "and its accumulations" shall be divided equally among "my said other children or their issue" in like manner as the balance of the fund "shall be handled, and not otherwise". The tenth clause states: "When and at the time the youngest of my said children shall have attained" the age of twenty-one years, the trustee is directed to make a settlement "with each of said children",

each to receive an equal share in the trust property and any accumulated income.

The trustor reserved the power, whenever he should deem it necessary, to revoke the trust. The trustee was empowered to nominate his successor, who should administer the trust in the same manner, and be vested with the same powers and duties. The thirteenth clause reads: ''That I as trustee shall defend the title to said real estate and every part and parcel thereof, against the claims of all persons whomsoever.'' The trustor declared that he, as trustee, would keep a strict account of the trust fund and all additions and accumulations and render a yearly statement. The twenty-first to twenty-fourth clauses inclusive contained some general and special provisions relating to the creation of so-called spendthrift trusts, designed to prevent the assignment, transfer, hypothecation, sale under execution or other process, or any other application of any part of the trust income or property to debts incurred by any of the beneficiaries.

█ If the trust thus attempted to be created is by its terms designed to be continued during the minorities of children born after the delivery of the trust instrument, it is obvious that the instrument creates a suspension of the power of alienation in violation of the provisions of section 715 of the Civil Code. That section provides that, except in the single case mentioned in section seven hundred seventy-two, which exception is not material here, ''the absolute power of alienation cannot be suspended, by any limitation or condition whatever, for a longer period than as follows: 1. During the continuance of the lives of persons in being at the creation of the limitation or condition; or 2. For a period not to exceed twenty-five years from the time of the creation of the suspension.'' The possibility of the suspension of the power of alienation created by the contingency that all of the persons in being at the time of the creation of the trust may die before the youngest unborn child becomes twenty-one years of age, or the possibility of the suspension beyond the twenty-five-year period, renders the trust void at its creation and title does not vest in the trustee. (Secs. 716, 749, 771, Civ. Code; *Estate of Troy*, 214 Cal. 53, 56 [3 Pac. (2d) 930].) █ ''Section 716 declares that 'every future interest is void in its creation which, *by any possibility*' may suspend the power of alienation longer than the Code permits. This possibility is

to be determined by the conditions existing 'at the time of the creation' of the limitation or future interest . . . ''—in this case at the time of the execution and delivery of the trust instrument. (Secs. 749, 771, Civ. Code.) '' 'The statute does not permit us to wait and see whether events may not so transpire that in fact no perpetuity [suspension] results, but if under the terms of the deed or will creating the trust, when properly construed, the instrument ''by any possibility may suspend'' the absolute power of alienation beyond the continuance of lives in being, the instrument, whether a deed or will, is void, and no trust is created nor any estate vested in the trustees'. (*Estate of Steele*, 124 Cal. 533, 537 [57 Pac. 564] ; . . . '' (*Estate of Whitney*, 176 Cal. 12, 15, 16 [167 Pac. 399] ; *Estate of Maltman*, 195 Cal. 643, 649 [234 Pac. 898] ; *Estate of Troy, supra,* p. 57.)

The defendants contend that the language of the instrument may be interpreted as limiting the period of suspension only during the minorities of the children living and named in the instrument, and yet carry into effect the intent of the trustor to apply the income and *corpus* of the trust property for the benefit of all the children of the trustor and his wife, both as to those living at the creation of the trust and those born thereafter. They state that this result may be achieved by ascribing the words ''said children'' and ''my said children'', appearing in the clauses of the trust declaration, and especially in clause ten, to the children in being named in the trust instrument. By so applying the words noted to those children who are named and living at the time of the creation of the trust, it is contended that the settlement directed in the tenth clause may be interpreted as a direction to make the settlement with all of the children both born and to be born, but at a time when the youngest of the named children arrives at the age of majority. If we assume that this interpretation would cure the defect, nevertheless it may readily be demonstrated that such a reading of the trustor's language would defeat rather than carry out his intention. The tenth clause reads: ''When and at the time the youngest of *my said children* shall have attained . . . the age of twenty-one years . . . I as trustee or my successor in trust shall make a final settlement with each of *said children* . . . '' This one instance, apart from all the other clauses noted in which similar language appears, is sufficient

to show that there could not be such a construction or application of those words without changing the grant made by the trustor. The same result is demonstrable when we seek so to construe identical language in other clauses of the deed herein noted. To give it the effect contended for would be to cut off from the operation of the trust instrument children born after the creation of the trust and deprive them of the share in the trust property clearly intended as well for their use and benefit.

To adopt the construction invoked without destroying the intent that all children be deemed to participate would require a holding that the first use of the words "my said children" in clause ten was intended to refer to the children in being named in the instrument, and that the second use of the same words in the same clause, and the use of similar words in other clauses of the instrument where appropriate to the result sought, referred to all children of the spouses, both those in being and those who might be born in the future. This would result in according to identical language, which in fact is plain and unambiguous, two different meanings for the purpose of upholding the trust. With much temerity, it would seem, the defendants seek first a strained and unwarranted interpretation of the plain language of the trust declaration, and then invoke the assistance of the court to the end that just claims of creditors may thereby be avoided. The courts have often construed the provisions of a will purporting to create a trust so as to prevent its invalidity where it is possible to do so and still carry out the intent of the testator; but the end in such cases is to prevent the intestacy which would otherwise result. (*Estate of Troy, supra; Estate of McCray,* 204 Cal. 399, 402 [268 Pac. 647] ; *Estate of Heywood,* 148 Cal. 184, 188 [82 Pac. 755] ; *Estate of Dunphy,* 147 Cal. 95, 99 [81 Pac. 315].) But no case has been cited, and doubtless none could be cited, wherein a court has followed that policy where the sole end to be accomplished is that just claims of creditors be defeated. Cases relied on by the defendants, such as *Booth* v. *Oakland Bank of Savings,* 122 Cal. 19 [54 Pac. 370], and *Noble* v. *Learned,* 153 Cal. 245 [94 Pac. 1047], have no application here, inasmuch as the intent to create a trust in the present case is not questioned.  The further contention is advanced by the plaintiff that the provisions of the trust instrument alone are sufficient evidence that

the instrument was executed for the purpose of isolating the property from the reach of the creditors of the trustor, and is void for that reason. There is sufficient merit in the contention within the reasoning of the decision in *Ullman* v. *Cameron*, 186 N. Y. 339 [78 N. E. 1074, 116 Am. St. Rep. 553], to dissuade this court from adopting the construction contended for by the defendants. A perusal of the provisions of the trust instrument herein briefly outlined indicates that the handling and management, and even the ownership, of the property, is or would be but little affected until the youngest child reached the age of majority, and only then in the event the trust had not previously been revoked. Here the defendants attempt to justify the provisions by virtue of their characteristics as a spendthrift trust; but it is quite obvious that the creation of a spendthrift trust to endure practically only during the minorities of the children discloses the key to the true effect of the instrument, viz., to keep the *corpus* and income for the use and enjoyment of the trustor and his family and at the same time place it beyond the reach of creditors. This court should not be expected to grant a certificate of approval to a plan the result of which is to tie up property for the benefit of the trustor and his family freed from any application thereof to the payment of the trustor's just obligations. ■ This view is sustained by the sound public policy, stated in the following cited authorities, that a person may not be permitted to have absolute and uncontrolled ownership of property for his own purposes and at the same time be able to keep it from his creditors. (*Estate of Morgan*, 223 Pa. 288 [72 Atl. 498, 132 Am. St. Rep. 732, 25 L. R. A. (N. S.) 263, and note] ; *Ullman* v. *Cameron, supra; In re Reich's Estate*, 146 Misc. 616 [262 N. Y. Supp. 623] ; *Pacific National Bank* v. *Windram*, 133 Mass. 175 ; see 27 Cor. Jur., p. 602 et seq.) The statement of the applicable policy bears repetition in the words of the New York Court of Appeals in the case of *Ullman* v. *Cameron, supra,* at page 346, viz.: " . . . as to my creditors, property is mine which becomes mine for the asking, and no words can make an instrument strong enough to hold it for me and keep it from them." In the present case the trustor did not even have to ask for any or all of the trust property. It was his for the taking. This condition, combined with other features of the trust herein noted, in our

opinion assists in clearing the way for the proper disposition of the appeal.

The application of the stated policy to facts thus calling for its application does not contravene the rule that a person may become trustee of a trust created by him, noted in *Cahlan* v. *Bank of Lassen County,* 11 Cal. App. 533, 540 [105 Pac. 765] ; or the rule declared in *Nichols* v. *Emery,* 109 Cal. 323 [41 Pac. 1089, 50 Am. St. Rep. 43]*, *Tennant* v. *John Tennant Mem. Home,* 167 Cal. 570 [140 Pac. 242], and *Estate of Willey,* 128 Cal. 1, 9 [60 Pac. 471] (Civ. Code, sec. 2280), that a power to revoke a trust may be reserved. Nor does it run counter to the well-established law that a valid spendthrift trust may be created. (*Estate of Edwards,* 217 Cal. 25, 27 [17 Pac. (2d) 116].)

It does not appear from the record that the judgment of the court was based on any invalidity in the plaintiff's asserted title other than an invalidity supposedly existing by reason of the creation or attempted creation of the trust here involved. That being the case, the appeal is disposed of by the foregoing observations. It follows that the judgment should be, and it is, hereby, reversed.

Curtis, J., Langdon, J., Seawell, J., Waste, C. J., and Conrey, J., concurred.